|2LeBLANC, Judge.
James Jones was indicted with two counts aggravated rape, violations of La.R.S. 14:42(A)(4). He filed a motion to suppress confession, which was denied. He pled not guilty and, after trial by jury, was found guilty of attempted aggravated rape on count one and guilty as charged on count two. The court sentenced him on count one to serve a term of fifty years imprisonment at hard labor and on count two to serve a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, concurrent to count one. Defendant has appealed, urging three assignments of error. Assignment three was not briefed on appeal and, therefore, is considered abandoned. See Uniform Rules — Courts of Appeal, Rule 2-12.4.

*753
FACTS

On September 9, 1990, the victim’s mother filed a complaint with the Pointe Coupee Parish Sheriffs Office concerning defendant’s conduct with the victim, her eleven-year-old daughter. Two days later, deputies arrested defendant for two counts of aggravated rape.
In August of 1990, the victim and her mother lived with defendant at his residence in Rougon. The victim testified that on two dates in August while the victim’s mother was at work defendant made the victim go to the bedroom and lie down. Defendant then took off his and the victim’s underwear and inserted his penis into her vagina. On each occasion, the victim told defendant she was hurting and he stopped. After the second incident, the victim was bleeding. The victim testified she was positive defendant had inserted his penis into her vagina each time. The victim did not immediately tell her mother about defendant’s actions. She explained she thought she had done something wrong and was scared. A medical examination conducted on the victim on September 9 revealed no evidence of vaginal penetration.
|3The victim’s mother testified the victim told her about the incidents on September 8, and during her testimony, the mother detailed the content of the victim’s statements. While watching television, the victim asked her mother what “child molestation” was. After the mother explained, the victim told her mother defendant had kissed her on different parts of her body, including her vagina. When the mother asked if defendant had done anything else, the victim described in detail how defendant had made her go into the bedroom and had used his penis on her. The victim told her mother defendant had threatened to harm her mother if her mother found out what had happened. The victim also told her mother she was scared. When the mother confronted defendant with the accusations, they got into an argument. The mother also testified that earlier the victim had told her about the bleeding and she had thought the victim had started her period.
Defendant made two statements after his arrest, and the statements were introduced at the trial. In an oral statement, he admitted hugging and kissing the victim. He also acknowledged wanting to have intercourse with the victim, but he denied inserting his penis into her vagina. He explained the victim’s vagina was too small and started bleeding. He also told the officers that, after trying to insert his penis, he licked the victim’s vagina and tried again to have intercourse. When told the victim claimed the incidents occurred two times, defendant denied this claim and said it happened only once. In a short written statement, defendant admitted he tried to have sex with the victim and tried to put his penis into her vagina during the second week of August. He also wrote that the victim started to bleed and he did not put his penis all the way into her. He indicated the incident occurred at his house while they were lying across the bed. In the written statement, defendant repeated his claim the incident occurred only one time.
^Defendant testified at the trial. He admitted putting his penis next to the victim’s vagina, but he denied inserting his penis into the vagina. He also denied licking the victim, and he maintained he never wrote anything in his statement about the victim bleeding. He claimed the victim’s mother filed the charges when he made her move out of his house.

DENIAL OF MOTION TO SUPPRESS STATEMENTS

In the first assignment of error, defendant maintains the court erred when it denied the motion to suppress statements. In particular, defendant claims the court’s ruling was inconsistent with its factual findings. Defendant further contends the evidence, which shows he has only a fourth grade education, does not support a finding he knowingly and intelligently waived his rights before making the statements.
On appeal, defendant does not attack the voluntariness of his statements; and the only issue presented to us concerns his ability to comprehend his Miranda rights. See State v. Green, 94-0887, pp. 8-9 (La. 5/22/95), 655 So.2d 272, 279. For a statement which is the product of custodial interrogation to be entered into evidence against a *754 criminal defendant, the state must establish that at the time the statement was made the defendant understood he was entitled to the right to remain silent and to consult with an attorney and nevertheless decided to speak. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even when a defendant has not expressly invoked his Miranda rights, the presumption is he did not waive the rights. A “heavy burden” rests on the state to demonstrate the defendant knowingly and intelligently waived the rights. When, as in this case, a defendant has expressly waived his Miranda rights, the question becomes whether or not the purported waiver was knowing and intelligent under the totality of the circumstances. Green, 94-0887, pp. 9-10, 665 So.2d at 280.
|sLow intelligence and illiteracy do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. The critical factor in all such cases is whether or not the defendant was able to understand the rights being explained to him. State v. Brown, 414 So.2d 689, 696 (La.1982).
In reviewing the correctness of a trial court’s ruling on a motion to suppress a confession, we are not limited to the evidence introduced at the hearing on the motion but may consider all pertinent evidence adduced at trial. State v. Brooks, 92-3331, p. 10 (La. 1/17/95), 648 So.2d 366, 372. We examine the evidence in order to discern whether the testimony of the state’s witnesses, when viewed in light of the entire record, is sufficient to sustain the state’s heavy burden of proving a knowing and intelligent waiver. We do not review the record de novo. Because the evaluation of witness credibility often plays such a large part in the context of a motion to suppress a confession, reviewing courts should defer to the finding of the trial court unless its finding is not adequately supported by reliable evidence. Green, 94-0887, p. 11, 655 So.2d at 281.
After reviewing the entire record, we conclude the evidence was sufficient to sustain the state’s heavy burden of proving a knowing and intelligent waiver. Thus, the court did not err when it denied the motion to suppress.
At the hearing held on the motion to suppress, the state presented the testimony of Sgt. Betty Jo Jackson and Detective L.J. David of the Pointe Coupee Parish Sheriffs Office. These officers testified Jackson advised defendant of his Miranda rights by reading a printed form prior to the oral statement. After defendant was advised of his rights, he said he understood the rights and wished to make a statement. He then signed a waiver of rights form and made the oral statement. The officers then secured a written statement. Prior to asking defendant to write the_[6statement, Jackson again read defendant his Miranda rights, this time using a form which used slightly different language. Defendant again waived his rights and wrote a seven-line statement in his own handwriting. According to the detectives, at no time did defendant articulate or in any other way evidence any lack of comprehension of his rights to remain silent or to have an attorney present. Defendant was not slow in responding to the questions, and he did not seem confused. The officers concluded defendant understood his rights. Before taking the statements, the officers asked defendant about his education and ability to read and write. Defendant, who was fifty-seven years old, told them he had completed the fourth grade. The officers also advised defendant he was charged with two counts of aggravated rape. Approximately fifty minutes elapsed from the time of the arrest until the completion of the written statement.
In his statement, defendant claimed he did not penetrate the victim. In his written statement, he stated he did not put his penis all the way into the victim and maintained the conduct occurred only one time. This capacity to recall specific details of the offense, as well as defendant’s attempt to exculpate himself from the more serious charge (rape as opposed to merely an attempt), are factors which bear upon his ability to understand his Miranda rights. Additionally, his testimony at trial establishes he has prior convictions, including a felony conviction for simple burglary. This familiarity with the criminal justice process is a relevant factor to *755 consider in determining his comprehension of his Miranda rights. See Green, 94-0887, p. 16-18, 655 So.2d at 283-84.
At the hearing, the defense presented no testimony in rebuttal to the state’s evidence. At the trial, defendant testified his house burned the morning of his arrest and he was drinking beer when the officers came to arrest him. He also claimed the officers forced him to make the statements. When asked by his attorney if he could read, defendant replied, “I can read some, but not that 17much.” At counsel’s request, defendant read portions of the rights form in court, but when asked if he understood what he had read, defendant said he would need somebody to explain it to him. Defendant admitted the handwriting on the written statement “looks something” like his own writing and conceded his signature was on the statement. However, he denied writing portions of the statement, in particular the section about the victim starting to bleed. In rebuttal, Detective David testified the officers did not force defendant to make the statements. He also maintained defendant did not appear to be in any distress, and he said defendant wrote everything in the written statement. Considering this rebuttal testimony and the entirety of the evidence, we find the court’s ruling is adequately supported by reliable evidence.
On appeal, defendant claims language used by the trial court in issuing its ruling was inconsistent with its decision to deny the motion. When it denied the motion, the court made the following remarks:
The Court denies the Motion to Suppress. I admit this is an uneducated man, charged with an extremely serious crime, bearing life imprisonment without the benefit of probation, parole, but the Supreme Court has not decreed that we need ‘em [sic] the severity of the sentence when they are confessing their lives away like that; exactly what he was doing, was confessing the rest of his life away. It seems shameful that that should be done without the advi[c]e of counsel. He was told that he had a right to a lawyer, and the — the form reads, if you cannot afford one, one will be provided to you. I don’t think he understood what was going on really, but he — too bad. The Court doesn’t require anything except an explanation of your rights. The rights have been read into the record a million times; the Miranda rights. You have the right to remain silent and the right to counsel, and if you cannot afford one, one will be provided for you. I can’t go beyond what they — they want.
To the extent these comments may reflect, as defendant claims, an opinion by the court that defendant did not understand the rights which were read to him or that the law does not require a defendant to make a knowing and intelligent waiver of the rights, the court’s comments are in error. However, we notice the comments were made in connection with the court’s concern the law does not require a suspect who is being questioned to be advised of the possible |8penalty and with the court’s disbelief that suspects confess despite knowing the confession might result in them having to spend time in jail. When viewed in this context, the court’s comments do not reflect a factual finding defendant did not comprehend his rights.
Even assuming defendant’s argument has merit and, therefore, the statements should have been suppressed and were inadmissible at trial, we find any such error in allowing the statements to be introduced at trial was harmless beyond a reasonable doubt. To determine if admission of the statements would be reversible error, we are obligated to conduct a de novo review of the record to determine if admission of the statements contributed to the convictions. State v. Glynn, 94-0332, p. 19 (La.App. 1st Cir. 4/7/95), 653 So.2d 1288, 1303, writ denied, 95-1153 (La. 10/6/95), 661 So.2d 464. See State v. Corley, 93-1934 (La. 3/11/94), 633 So.2d 151, 154, cert. denied, — U.S. —, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). See also State ex rel. White v. State, 606 So.2d 787, 789 (La.1992).
The main theory of the defense was lack of penetration. In both the oral and the written statements, defendant was adamant penetration had not occurred, and his testimony at trial was consistent with the statements. Accordingly, any error which would have oc *756 curred with improper admission of the statements would be considered to be harmless beyond a reasonable doubt. This assignment is without merit.

INTRODUCTION OF VICTIM’S INITIAL COMPLAINT OF SEXUAL ASSAULT

In the second assignment of error, defendant contends the court erred when it overruled his hearsay objection to testimony of the victim’s mother concerning statements the victim made about a month after the offenses. Defendant argues the victim’s statements were not made at the first reasonable opportunity and, thus, do not qualify for admission either as res gestae or as an initial complaint of the victim.
19Under article 801(D)(1)(d) of the Louisiana Code of Evidence, the “initial complaint” of a victim concerning “sexually assaultive behavior” is considered to be nonhearsay. To qualify for admission under this provision, the declarant must testify at the trial or hearing and be subject to cross-examination concerning the statement; and the statement must be consistent with the declarant’s testimony.
Prior to the Code of Evidence, complaints of sexually assaultive behavior were admissible under the theory of res gestae if the state could show there was no unexplained lapse of time between the rape and the victim’s complaint. However, under article 801(D)(1)(d), the initial complaint need not be prompt and any delay in making the complaint does not affect admissibility (although such delay is weighed in assessing the credibility of the victim). See State v. Moran, 584 So.2d 318 (La.App. 4th Cir.), writ denied, 585 So.2d 576 (La.1991).
In the instant case, the victim testified at the trial that her mother was the first person she told about defendant’s conduct. She was subjected to cross-examination, and her testimony was consistent with the statements she made to her mother. Accordingly, despite the victim’s delay in reporting the offenses, the requirements of article 801(D)(1)(d) were met, and the court did not err when it overruled the hearsay objection. This assignment lacks merit.

PATENT ERROR

In reviewing the record for patent error, we have found error in the sentences. The trial court did not give defendant credit for time served. See La.C.Cr.P. art. 880. Accordingly, we amend the sentences to reflect defendant is to be given credit for any time served prior to execution of his sentences. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the | ^sentencing to reflect defendant is to be given credit for time served.
CONVICTIONS AFFIRMED. SENTENCES AFFIRMED AS AMENDED; REMANDED WITH ORDER.