681 So.2d 1023 (1996)
STATE of Louisiana, Appellee,
v.
Tyrone WALKER, Appellant.
No. 28577-KA.
Court of Appeal of Louisiana, Second Circuit.
October 4, 1996.
*1025 Carey J. Ellis, III and Theo J. Coenen, III, Rayville, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
NORRIS, Judge.
Tyrone Walker was charged by amended indictment with the second degree murder of Carl "Sonny" Grant. La.R.S. 14:30.1. At *1026 trial in September 1993, a jury by a 10-2 decision found Walker guilty as charged. The court ultimately imposed the mandatory life sentence at hard labor without benefit of parole, probation or suspension of sentence. Walker now appeals, advancing five assignments of error. For the reasons expressed, we affirm.

Facts and Procedural History
On February 5, 1993 Carl Grant, 81 years old, was found dead in his Wisner, Louisiana home in Franklin Parish. The body was discovered in the early afternoon by a neighbor who promptly called police chief Ronnie Jennings. Chief Jennings called the Franklin Parish Sheriff's department for assistance and the sheriff's office in turn notified the state police. Chief Jennings arrived at the residence shortly after the call and secured the crime scene. The cause of Grant's death was later determined to be acute cardio respiratory failure caused by two gunshot wounds to the head.
After securing the crime scene, officers spoke with Taveny Herd, a minor who lived nearby. She told officers that Walker and his friend Kenneth Modique had asked her earlier that day to cash a money order for them. She refused to do so because Walker told her the money order belonged to his daughter and she did not think he had a daughter. Shortly thereafter she heard about Grant's death and informed the officers because she believed that the money order may have belonged to Grant.
Seeing Walker and Modique standing in the crowd near Mr. Grant's home, officers approached both men and noticed what appeared to be blood on Walker's pants and shoes. Officers asked them to remove their shoes for closer inspection, and they agreed.
The Franklin Parish deputies took Walker and Modique to the Sheriff's office for questioning. Upon arrival at the Winnsboro office, both Walker and Modique voluntarily allowed the deputies to take their clothing for further analysis. No attempt was ever made to match the blood on the clothes with Mr. Grant's; however, an expert forensic scientist testified that the tread of Walker's shoes was consistent with bloody shoeprints found in Mr. Grant's house.
After receiving his Miranda rights, Walker gave several statements to law enforcement officers concerning his involvement in Grant's death.

The Statements
Walker first told deputies he had gone to Mr. Grant's house between 11:30 p.m. on February 4 and 1:00 a.m. the next morning to pay $10 of a $40 debt he owed Mr. Grant. Walker stated that Mr. Grant became very angry because Walker had only part of the money and Grant pulled out a .25 caliber handgun. Walker stated that the two struggled over the weapon, but that Walker recovered it and shot Mr. Grant twice. Walker then stated that he pulled Mr. Grant's pants down to make it appear he was murdered and possibly robbed by a prostitute. Walker told investigators that he put the murder weapon and several stolen items from the Grant house in an abandoned truck and stove behind his sister's house. A search warrant was obtained whereby officers recovered the.25 caliber pistol, as well as other handguns, a flashlight, gloves, a cigar box containing Mr. Grant's hunting license, and other personal property of the victim.
Walker's next three statements were substantially the same, and did not implicate Kenneth Modique in the murder. Walker also never indicated that he went to the house carrying a weapon. Trooper Norris testified at trial that up to that point, his impression was that Walker went to the victim's house without a gun and it was the victim's gun used in the homicide.
The final two statements given to the state police were introduced at trial as Ex. S-55B, S-56A. The first of these was taken by State Trooper Norris on February 6, 1993 at 3:28 p.m. In that statement Walker indicated that on February 4th around 9:00 in the evening he and some friends were drinking and socializing at a Mini-Mart near his home. Shortly thereafter Kenny Modique stated that he was going to "rob [him] a M* * * * *-F* * * * * tonight." Later, around 11:00 p.m., Modique picked up Walker and they went to Grant's house. He *1027 claimed that Modique pulled a gun on Mr. Grant and forced him to give Modique his money. Modique then shot Grant twice in the head at close range. Walker denied shooting Mr. Grant, insisting he only agreed to go with Modique to rob Grant and never intended to kill him.
The last statement Walker gave was on February 6th beginning at 10:37 p.m. See Ex. S-56A. In that statement, Walker claimed that on the evening of the 4th, he was socializing and drinking on the street corner when Mr. Grant drove up in a car. Grant apparently demanded that Walker bring the money owed to him that evening and stated otherwise, "I've got something for your ass." Walker indicated that he borrowed $10 from his brother-in-law and went to Grant's home around 9:00 p.m. Walker stated an argument ensued over the amount paid on the loan; Mr. Grant raised a gun. Walker then pulled out a .25 caliber pistol he purchased from his nephew and shot Grant twice. Walker then went to his sister's house and asked Kenneth Modique to come help him move Grant's body. The two returned to the house and pulled Grant's pants down to make it appear as if a prostitute killed him. Walker admitted that he and Kenneth Modique took several guns and a cigar box from Mr. Grant's house; however, he stated that he did not intend to kill Grant, but was scared and acted before Grant could.

The Trial
Walker and Modique were both charged with murder and tried separately. In his opening statement, defense counsel conceded to the jury that Walker shot and killed Grant, but contended the evidence would show it was done in self-defense. Walker did not testify, but several witnesses contradicted certain aspects of his statements. Walker's 13-year-old nephew testified that he stole the .25 caliber pistol used in the homicide and lent it to Walker in return for $7 on February 3, 1994. Walker's nephew identified the pistol recovered pursuant to the search warrant as the same pistol he lent Walker. See Ex. S-2-A. He further testified that Walker only wanted the pistol for one night, but the next day Walker told him the gun was taken by the police.
Pat Lane, state forensics expert, testified that he participated in the search for the murder weapon and identified Exhibit S-2-A as a gun found during that search. Lane later performed ballistics tests on this gun and the two bullets recovered from Grant's body as well as the bullet casing found near Grant's body. He determined that the gun marked Exhibit S-2-A was the gun used to kill Mr. Grant. Furthermore, Lane testified that the shoes recovered from Walker on September 5, 1993 compared favorably to the bloody shoeprints found inside Grant's house; Kenneth Modique's did not.
Roosevelt Black, who lived with Walker's sister at the time of Mr. Grant's death, also testified. He stated that Walker and Modique were at the sister's residence on the evening of the murder and he heard someone leave the house around midnight. He also stated that he heard two pistol shots fired approximately thirty minutes later and that Grant's house was in close proximity to defendant's sister's house.
Defense counsel's theory of defense was that Mr. Grant was a violent "money lender" who threatened people who refused to repay and that Walker had shot Mr. Grant in selfdefense or in the heat of passion. The defense elicited testimony on cross examination that Mr. Grant carried a shotgun in his car. However, only one witness could remember Mr. Grant ever attempting to use physical force over a debt. Also, Chief Jennings testified that he knew Mr. Grant was very peaceable and went to bed early; there were no reports of him ever pulling a gun on anyone.
The prosecutor argued that the slow-moving octogenarian would have been no physical threat to Walker. He also argued that the fact that valuable items were taken from Mr. Grant's home and later recovered based on Walker's own statements undermined the self-defense theory and pointed to a robbery or burglary motive. The State also offered the testimony of Juanita Herd to show that Mr. Grant did not threaten Walker over the past due loan on the day of his death as stated by Walker.
*1028 The jury found, in a 10-2 decision, Walker guilty as charged and the court imposed the mandatory sentence. Walker appeals the judgment asserting five assignments of error.

Discussion: Sufficiency of the Evidence
By his fifth assignment of error Walker contests the sufficiency of the evidence. If a court reviewing a criminal conviction finds the evidence insufficient to support a guilty verdict, the constitutional protection against double jeopardy bars retrial of the defendant. Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981); see U.S. Const. amend. V, XIV. All other issues in the case become moot. State v. George, 95-0110 (La. 10/16/95), 661 So.2d 975; State v. Hearold, 603 So.2d 731, 734 (La.1992).
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Huff, 27,212 (La.App. 2d Cir. 8/23/95), 660 So.2d 529. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, supra. The appellate review standard is whether, after viewing the evidence, both admissible and inadmissible, in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Famous, 27,593 (La.App. 2d Cir. 1/24/96), 667 So.2d 1209.
Double jeopardy does not bar retrial when evidence is erroneously admitted against a defendant, even if there was insufficient evidence to support a conviction without that erroneously admitted evidence. Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988); Hearold, supra. Accordingly, assignments of error 1 and 3, discussed hereinafter, are irrelevant to our sufficiency of the evidence inquiry.
Second degree murder, as it pertains to this case, is defined as the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm, or (2) when the offender is engaged in the perpetration or attempted perpetration of armed robbery or aggravated burglary, even though he has no intent to kill or cause great bodily harm. La.R.S. 14:30.1 A(1), (2). Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. The force or intimidation may be applied at any time in the course of the crime in order to complete the offense. State v. Meyers, 620 So.2d 1160 (La.1993). Aggravated burglary is the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon. La.R.S. 14:60. Because we find sufficient evidence to support the conviction on either felony murder theory, we pretermit discussion of the specific intent to kill or inflict great bodily harm.
Any rational juror could have found that Grant was killed during the commission of an armed robbery or an aggravated burglary. The circumstantial evidence in this case was sufficient to convict Walker of either of these felonies. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Bourque, 622 So.2d 198, 244-45 (La.1993); State v. Shaw, 27,892 (La.App. 2d Cir. 4/3/96), 672 So.2d 237. Because the jury in this case was presented with both direct and circumstantial evidence, we must determine whether the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all the elements of the crime were proven beyond a reasonable doubt. State v. Meyers, supra.
Walker admitted shooting Grant and taking his property; his statements led police directly to the pistol that killed Mr. Grant, as well as several firearms and other items taken from Mr. Grant's house. Although in one statement Walker claimed he went to Mr. Grant's home at 9:00 p.m. instead of midnight *1029 (a much more unusual time to pay a debt), that was contradicted by the testimony of Roosevelt Black and T.J. Washington, Jr. Viewed in the light most favorable to the state, the evidence is convincing beyond a reasonable doubt that Walker went to Grant's home in the middle of the night armed with a dangerous weapon with the intent to rob him or burglarize his home.
Defendant argued that Grant pulled a gun on him, a struggle ensued and he shot Grant twice in self-defense. However, no weapon was found near Grant's body and medical evidence showed no physical signs of a struggle. Also significant are Walker's actions after the shooting; he admitted attempting to move the body after the killing to conceal what had happened and pulling down Mr. Grant's pants to make it appear he was murdered by a prostitute. When authorities questioned Walker he changed the details of his story several times, at one point even shifting blame onto Modique. Moreover, these inconsistent details contained in his statements, and the testimony that directly contradicted them, were such that the jury could easily dismiss as incredible his claims of self-defense or manslaughter; we will not disturb this credibility call. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied 567 So.2d 93 (1990). Once the jury rejected these defense theories, the evidence was obviously sufficient to support the conviction beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984). This assignment lacks merit.

Voluntariness of Confessions
By his first assignment, Walker contends the trial court erred in refusing to grant his motion to suppress. He argues that his confessions and statements were not free and voluntary. The motion to suppress alleged that Walker was intoxicated during his interrogation, that he was denied food and sleep, that he was threatened with the death penalty if he did not cooperate, and that he was promised lenient treatment if he confessed. See R. pp. 107-08.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703 D; State v. Sepulvado, 93-2692, p. 4 (La. 4/8/96), 672 So.2d 158, 163. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See, e.g., State v. Fowlkes, 25,870, p. 7 (La.App. 2d Cir. 3/30/94), 634 So.2d 953, 957.
When the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the state to specifically rebut each instance of alleged misconduct. State v. Brooks, 505 So.2d 714, 720-21 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Davis, 92-1623, p. 20 (La.5/23/94), 637 So.2d 1012, 1024, cert. denied, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
Whether the state has made an adequate showing that the defendant's confessions were free and voluntary depends on the facts of the individual case. State v. Benoit, 440 So.2d 129 (La.1983); State v. English, 582 So.2d 1358 (La.App. 2nd Cir.) writ denied 584 So.2d 1172 (1991). Likewise, an evaluation of witness credibility often plays a large part in the context of a motion to suppress a confession, thus a reviewing court should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence. State v. Green, 94-0887, p. 11 (La. 5/22/95), 655 So.2d 272, 281; State v. English, supra.
At the hearing on the motion to suppress, the state presented six witnesses, all law enforcement officers. Deputy Coleman, Deputy Matthews, and State Trooper Norris all testified that Walker did not appear intoxicated at the time of his questioning and was never forced to go without food or sleep. Trooper Norris and Deputy Coleman denied they threatened Walker at any time or promised him anything in return for giving a statement. Deputy Matthews testified that he had initially explained to Walker his Miranda rights at some length, that *1030 Walker understood them, and had signed a form waiving his rights. See Ex. S-19. The deputy testified that he brought Walker a cup of coffee when he asked for one. Trooper Norris, who took two statements from Walker, testified that he read Walker his rights before each questioning, Walker indicated he understood his rights, did not invoke them, and did not ask for further explanation of the waiver.
Finally, Walker's bare allegations are the only hint of misconduct in this record. Walker presented no evidence at the suppression hearing and the only evidence before the district judge was the testimony of the six law enforcement officers. The trial court obviously found this evidence credible and we find no basis to undermine that conclusion. We perceive no abuse of discretion.
We note, however, that defendant argues for the first time on appeal that "[t]here is no indication that Tyrone Walker was able to read." Br. p. 5. This argument is not properly before the court, because a new basis for objection cannot be raised for the first time on appeal.[1] La.C.Cr.P. art. 841; State v. Burdgess, 434 So.2d 1062, 1067 (La.1983); State v. Smith, 26,661 (La.App. 2d Cir. 3/1/95), 651 So.2d 890, writ denied 95-0918 (La. 9/15/95), 660 So.2d 458. This assignment does not present reversible error.

Change of Venue
By his second assignment of error, Walker contends the district court erred in denying his motion for a change of venue when there existed prejudice toward him in the public mind of the community. In support of his motion, Walker submitted one article and one letter to the editor printed in the Franklin Sun over seven months before the trial began. The article appeared on February 10, 1993 and described the circumstances of Mr. Grant's death and Walker's subsequent arrest. The letter to the editor appeared on February 23, 1993. It was written by an alleged rape victim who was disgusted with the criminal justice system and claimed that her assailant had "beaten the rap" and was now charged with Mr. Grant's murder; Walker's motion alleged he had indeed been previously tried and acquitted of rape.[2]See R. pp. 111, 181. Based primarily upon these two articles, defendant alleged a change of venue was warranted.
La.C.Cr.P. Art 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
On a motion for a change of venue, the defendant bears the burden of proving that he cannot obtain a fair trial in the parish where the case is pending. State v. Hattaway, 28,060 (La.App. 2 Cir. 5/8/96), 674 So.2d 380; State v. Henderson, 566 So.2d 1098 (La.App. 2d Cir.1990). A "fair trial," however, does not mean that the jury must be totally ignorant of the case. The defendant must show more than that the public had mere knowledge of the facts of the case; rather he must prove that there exists a prejudice in the collective minds of the community that would make a fair trial impossible. State v. Lee, 559 So.2d 1310, 1312-13 (La.1990), cert. denied, 499 U.S. 954, 111 *1031 S.Ct. 1431, 113 L.Ed.2d 482 (1991). Likewise, trial courts should grant a change of venue when the state of the public mind against the defendant is such that prospective jurors will not be completely honest upon voir dire examination, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly. Id.
A trial court is vested with great discretion in determining whether a change of venue is warranted. State v. Flood, 301 So.2d 637 (La.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); State v. Plater, 26, 252 (La.App. 2d Cir. 9/21/94), 643 So.2d 313, writ denied, 94-2608 (La. 2/3/95), 649 So.2d 402. Nevertheless, a reviewing court may make an independent evaluation of the record to determine whether the accused received a trial which was free and unfettered by outside influences. Plater at p. 2, 643 So.2d at 315.
Review of the record and the index of exhibits indicates that the defense never introduced either of the newspaper clippings into evidence; nevertheless, the court read them. Additionally, the defense called Sheriff Eugene Parker who testified that some law enforcement officers were unhappy over the result of Walker's prior trial, but he believed there was no general public sentiment in Franklin Parish denouncing Walker.
We have carefully reviewed the voir dire, trial transcript and the newspaper articles; there is no sufficient showing of prejudice against defendant or any reason that he could not receive a fair and impartial trial in Franklin Parish. Therefore, upon the evidence presented in this record, we find the trial court did not abuse its discretion in denying Walker's motion for a change in venue.

Admissibility of Evidence
By his third assignment of error, Walker alleges the trial court erred in allowing the testimonial evidence of Taveny Herd without sufficient notice to the defendant, a violation of La.C.Cr.P. art. 768. Walker further argues that Ms. Herd's testimony constitutes inadmissible "other crimes" evidence.
Article 768 provides that unless the defendant has been granted pretrial discovery, the state must notify the defendant in writing prior to its opening statement if it intends to introduce a confession or inculpatory statement. Here, the district court granted discovery and thus Article 768 is inapplicable to this case. See State v. Johnson, 513 So.2d 832, 837 (La.App. 2d Cir.1987), writ denied, 519 So.2d 124 (1988).
The text of Walker's brief, however, argues that the trial court erroneously admitted "other crimes" evidence. The procedural aspect of the argument is presumably based on La.C.Cr.P. art. 720. Article 720 provides that upon defendant's motion, the district court must order the district attorney to inform the defendant of the state's intent to offer evidence of the commission of any other crime. We note, however, that the state in fact did comply with this requirement in its "Second Amended Answer to Motion for Discovery and 768 Notice." R. p. 95. This document explicitly notifies Walker of the state's intent to offer Ms. Herd's testimony regarding Walker's attempt to get her to cash a money order.
The substantive aspect of the argument is based on La.C.E. art. 404 B(1), which provides that the state, upon prior notice, may offer evidence of the defendant's other acts to prove motive, opportunity, intent, plan, preparation, knowledge, identity, or absence of mistake or accident. The State may without prior notice offer evidence of the defendant's other conduct when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. Id. In order for evidence meeting the 404 B(1) criteria to be admissible, the evidence must be at issue, have some independent relevance, or be an element of the crime charged. State v. Jackson, 625 So.2d 146 (La.1993).
Walker contends that the testimony of Taveny Herd does not fall within any of the 404 B(1) exceptions, and that the state did not follow the procedures set forth in Jackson. The state asserts, however, that Ms. Herd's testimony was not offered as "other crimes" evidence or to prove Walker's bad character, but rather to illustrate the chain of events *1032 which led the investigators to suspect the defendant. In State v. Perry, 502 So.2d 543 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987), a defendant committed first degree murder in Louisiana. He was apprehended in Washington, D.C., by Washington police investigating a complaint that the defendant had stolen a radio. At the time Washington police discovered he was wanted on murder charges in Louisiana, the defendant was not under arrest for the theft of the radio. Perry, supra.
The Supreme Court held that testimony regarding the stolen radio was admissible, because it was necessary to explain the Washington arrest in order to lay the foundation for the introduction of physical evidence discovered in Washington. Id. The Perry court also held that the theft of the radio was insignificant compared to the charged offense of first degree murder and could not have influenced the jury to believe the defendant was a "bad man." Id.
The Perry decision illustrates that testimony regarding an unrelated offense is admissible if necessary to explain to the jury why law enforcement initially began to suspect the defendant. Such testimony is not subject to the La.C.E. art. 404 B(1) requirement that the other offense be proved by clear and convincing evidence, because evidence of the other offense is not offered for its truth, or for any of the enumerated purposes. See also, State v. Moore, 26,329 (La. App. 2 Cir. 8/17/94), p. 4, 642 So.2d 679; State v. Harris, 573 So.2d 1195 (La.App. 4th Cir.1991); United States v. Smith, 930 F.2d 1081, 1087 (5th Cir.1991). It is simply offered to provide a complete narrative of the events leading to the instant charge. Thus, it is independently relevant evidence whose prejudicial effect must be weighed against its probative value.
In this case, as in Perry, the inference of theft to be drawn from Ms. Herd's testimony was remote at best, and the probative value of her testimony outweighed its prejudicial effect. La.C.E. art. 403. If the state had not been able to explain the sequence of events which led the officers to question Walker (and thus to discover the blood on his pants and shoes), the officers' actions in questioning Walker and talking his clothes may have appeared arbitrary to the jury. The state introduced Ms. Herd's testimony for the specific, limited purpose of describing how the police came upon important evidence. Furthermore, the money order was never referred to by the State as stolen and the word theft was never used. The district judge did not abuse his discretion in allowing Taveny Herd's testimony.
We finally note that the jury was never informed that the money order was in fact not taken from Mr. Grant; however, this omission does not constitute reversible error on the district court's part. The defense never requested a limiting instruction and the district court need only offer a limiting instruction when the defendant so requests. State v. Jackson, 625 So.2d at 149; La.C.E. art. 105. This assignment does not present reversible error.

Challenges for Cause
Walker urges in his fourth assignment the trial court erred in failing to sustain his challenges for cause as to five prospective jurors. To prove error warranting reversal of a conviction and sentence, a defendant must show (1) the erroneous denial of a challenge for cause and (2) the use of all his peremptory challenges. La.C.Cr.P. art. 800; State v. Mitchell, 94-2078 (La. 5/21/96), 674 So.2d 250.
In the instant case, we need not reach the issue of whether there was an erroneous denial of Walker's challenges for cause, since the record reveals that defendant failed to use all his peremptory challenges allotted by law. Accordingly, Walker is not entitled to relief.[3] This assignment is without merit.

*1033 Conclusion

We have reviewed the record and found nothing we consider to be error patent. For the reasons expressed, Walker's conviction and sentence are AFFIRMED.
NOTES
[1] Even if it were properly before this court, the argument has no merit. Illiteracy, like low intelligence and moderate mental retardation, does not by itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Brown, 414 So.2d 689, 696 (La.1982); State v. Jones, 94-2579, p. 5 (La.App. 1st Cir. 2/23/96), 668 So.2d 751, 754. The primary inquiry is whether the defendant understands his rights. Brown at 696. In the case sub judice, Walker's rights were read and explained to him, not just read by him. The district judge had ample evidence before him to conclude that Walker understood his rights and voluntarily waived them.
[2] The State maintains that Walker was actually charged with attempted aggravated rape and with aggravated burglary. R. p. 186.
[3] We note, however, our review of the entire voir dire reveals no abuse of discretion by the trial judge in denying any of the challenges for cause.