714 So.2d 162 (1998)
STATE of Louisiana, Appellee,
v.
Charles H. FRANKLIN, Appellant.
No. 30644-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*163 J. Wilson Rambo, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Doug R. Haynes, II, D. Brian Harkins, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, Judge.
This criminal appeal arises from the Fourth Judicial District Court, Quachita Parish, the Honorable Marcus R. Clark, presiding. The defendant, Charles H. Franklin, was convicted by bench trial of armed robbery, a violation of La. R.S. 14:64. Pursuant to a plea agreement with the state, the defendant agreed to plead guilty as charged with a sentencing cap not to exceed 40 years at hard labor without benefit of parole, probation or suspension of sentence. In accordance with the plea agreement, the trial court sentenced the defendant to serve thirty (30) years at hard labor without benefit, of parole, probation or suspension of sentence. From this conviction and sentence, the defendant appeals urging that his sentence is excessive and that the trial court failed to advise him that he was relinquishing his right of review of sentence. We affirm.

FACTS
On December 10, 1996, the victim, Sara Benton, was in a temporary building on the property of the Lida Benton Elementary School in Monroe, Louisiana. Kindergarten classes were in session. A black male made his way into the victim's classroom and pulled a four-inch knife on her. He told her "don't do anything funny or I'll cut you to pieces. I want your purse." The robber fled the scene with the victim's purse, valued at $20. The purse contained $18 in cash, several credit cards and other personal items. A witness, Linda Kelly, saw the robbery take place. Some of the kindergarten children suggested that the defendant could be the robber. Both the victim, Benton, and the witness, Kelly, picked him out of a photographic lineup. When the police arrested the defendant, on a warrant, he was found with a knife which matched the description given by the victim. He also made a complete confession to the armed robbery and blamed it on the "water". Based upon the court's experience, this phrase means using phencyclidine, PCP.
On January 7, 1997, a bill of information was filed charging the sixteen-year-old defendant with armed robbery, a violation of La. R.S. 14:64. The district court appointed the Indigent Defender Board to represent the defendant. The defendant agreed to plead guilty as charged with a sentencing cap not to exceed 40 years at hard labor without benefit of parole, probation or suspension of sentence. In accordance with the plea agreement, the trial court sentenced the defendant to serve thirty (30) years at hard labor without benefit, of parole, probation or suspension of sentence. The district court denied a timely motion to reconsider sentence. On appeal, the defendant urges that his sentence is excessive and that the trial court failed to advise him that he was relinquishing his right to have the sentence reviewed.

INVALID GUILTY PLEA
In assignment of error number one, the defendant urges that his guilty plea is invalid because the trial court failed to advise the *164 defendant that by taking an agreed sentence, the defendant would waive his right to have the excessiveness of the sentence reviewed.
The defendant's motion to reconsider sentence and his assignment of error is silent about this claimed error. Although the appellate defense counsel says this "failure" of advice is error patent, he has not provided any authority which supports that contention.
The jurisprudence holds that the entry of a guilty plea must be a free and voluntary choice on the part of the defendant. State v. Garth, 622 So.2d 1189 (La. App. 2d Cir.1993). A valid guilty plea requires a showing that the defendant was informed of and waived his constitutional rights of trial by jury and confrontation and the privilege against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); State v. Monroe, 25,825 (La.App.2d Cir. 3/30/94), 635 So.2d 481. Further, for a guilty plea to be considered voluntarily and knowingly entered, the trial court should apprize the defendant of the possible sentence range for the offense to which he pled guilty. State v. Garth, supra.
The latter requirement for a voluntary and knowing plea may be satisfied by either the trial judge or an explanation by defense counsel that defendant was counseled about his sentencing exposure before the plea was entered. State v. Mitchell, 561 So.2d 819 (La.App. 2d Cir.1990).
In the instant case, the record reflects that the district court advised the defendant of his Boykin rights as well as of the elements of the offense and the sentence range. At the beginning of the hearing, the trial court inquired as to defendant's age and education level. The defendant was sixteen years old and had completed the ninth grade. The trial court advised the defendant of his rights, including the right to a trial by jury, the right to confront witnesses and the right against self incrimination. The defendant responded affirmatively when asked by the court whether he understood that by not having a trial he would be giving up the right to an appeal or to have a higher court review his case to see if any errors were made. The defendant answered that he understood the rights, and that he would be waiving them if he pled guilty. The court stressed to the defendant that his sentence would be served without benefit.
During the colloquy prior to the guilty plea, the defendant testified that he and his attorney had discussed the case and the law and that he understood it. Further, the defendant testified that he was satisfied with the representation of his attorney and denied being forced, coerced or threatened by anyone into pleading guilty. The defendant voluntarily and with the assistance of counsel decided to enter into a plea agreement. At the end of the colloquy, the trial court concluded that the defendant understood the consequences of the plea and knowingly and voluntarily pled guilty.
We have held that a record affirmatively showing that the defendant understood the charge against him and was aware of the permissible penalty range for that offense is sufficient and will not render a guilty plea invalid.
In furtherance, La.C.Cr.P. art. 881.2(A)(2) provides that: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171. After reviewing the entire guilty plea proceeding and considering the above jurisprudence, we find that the record is sufficient to prove the defendant voluntarily and knowingly entered the plea agreement. We find that this assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number two, the defendant urges that the sentence imposed by the trial court, thirty (30) years at hard labor without benefit, of parole, probation or suspension of sentence, is an excessive sentence.
As stated above, La.C.Cr.P. art. 881.2(A)(2) provides that: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement *165 which was set forth in the record at the time of the plea." This provision applies both to agreed sentences and to agreed ceilings, "ranges" or "caps." State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171; State v. Rice, 26,478 (La.App.2d Cir. 12/7/94), 648 So.2d 426, writ denied, 95-0431 (La.6/16/95), 655 So.2d 340.
The record shows that the state, the defendant, and the trial court all agreed to the forty (40) year "cap" or ceiling on the defendant's sentence. The defendant voluntarily decided to enter into a plea agreement so that he would not be subjected to a term of imprisonment longer than a total of forty years for the charge against him. Thus, the subsequent thirty (30) year sentence imposed is within the limits of this agreement. Therefore, we find La.C.Cr.P. art. 881.2(A)(2) precludes the defendant from appealing his sentence imposed in conformity with a plea agreement which was set forth in the record at the time of his plea.
Furthermore, even if the defendant had not entered into a plea agreement, the sentence is within the trial court's broad discretion. The trial court reviewed the defendant's PSI report. The defendant had amassed seven write-ups while awaiting sentencing: namely, property destruction (twice), disobedience, disorderly conduct, defiance (twice), disruptive behavior (twice), possession of contraband (a knife), and for being a security risk.
Deputy J.M. Parker (Deputy Parker) testified about the defendant's behavior while in custody. The defendant scratched "C Low" (his alias) on the walls and various other places that had been freshly painted and laughed about it. He destroyed parish property, using T-shirts issued to him to make skull caps. During a shake down inspection, the defendant had extra unauthorized blankets and clothing items. The defendant argued with the deputy and tried to retrieve the contraband. He was belligerent, hostile, and cursing during another shake down. He destroyed another T-shirt to make a skull cap.
On April 30, the defendant had been moved to a lock-down cell to reduce his disruption of the facility. He cursed at the deputy and persisted in pushing a communicator button even after he was told to refrain from doing so. The defendant persisted in this behavior for over an hour. Sometime later, the deputy saw him cutting paper and recovered a contraband knife called a "shank" from him. He had another skull cap at that time also.
The defendant persisted with his disruptive behavior. On May 10, the defendant staged a fight with inmate Frederick Butcher to try to get moved to a different cell.
On May 3, the defendant used an administrative remedy procedure to curse the deputies and make threats against them in writing. He was cited for defiance and disrespect.
On May 4, the guards overheard the defendant saying he was going to try to climb a fence to get out of the recreation yard. This resulted in a security risk write-up. Deputy Parker testified that the defendant has been a constant problem and that the "write-ups have [sic] done nothing to him. He just laughs and keeps on going." The court ascertained from the deputy's testimony that no counselors had spoken with the defendant to try to figure out why he acts the way he does.
The court then reviewed the PSI report. The defendant was 16 years old at the time of the armed robbery. In conformity with a plea agreement, which consisted of a 40-year sentencing cap, the defendant plead guilty as charged. The plea agreement reduced his sentencing exposure from 99 years without benefit to 40 years without benefit. The court considered the facts of the case, mentioning that the defendant said he would cut the victim into pieces in the presence of a class of kindergarten children. Although the robbery took place during nap time, some of the children were awake and upset by this incident.
The defendant admitted to the probation officer that he had been hanging around some gang members and claimed he had been "smoking water." Based upon the court's experience and the presentencing report, the phrase "smoking water" means using *166 phencyclidine, PCP. The court considered many letters written on the defendant's behalf. The defendant had two juvenile arrests for simple criminal damage to property, and one arrest for obstructing a passageway.
The defendant was arrested in October 1996 for simple burglary, pled guilty and received probation until his 17th birthday. He was awaiting sentencing when he committed the instant offense, armed robbery.
The court noted that armed robbery is a serious offense against the person. As mitigation, the court considered that the defendant is a juvenile and a youthful offender. The offense carries limited good time. As aggravation, the court noted that this is a crime of violence and it was committed at a school where kindergarten children were exposed to this violence. The defendant had no business being at that school. He was awaiting sentencing at the time on a charge of burglary, which is also a serious crime. The defendant had shown a total disregard for the law, as shown by committing this offense while awaiting sentence and as shown by the numerous write-ups while awaiting trial and sentencing.
In furtherance, the court noted that the defendant had no respect for other person's property or for police officers. He manifested deliberate cruelty on the robbery victim. He knowingly created a risk of death or great bodily harm to more than one person. He used threats of actual violence in the commission of the offense. The court then went through some of the correctional write-ups and the mitigating factors again.
The court found that the defendant had no intention of correcting himself at this time in his life. The defendant's conduct threatened serious harm. There was no indication of provocation. There was no justification for the offense. The victim neither induced nor facilitated the commission of the offense. The defendant had not compensated the victim for her loss. The court further noted that imprisonment would not entail excessive hardship on the defendant and that a lesser sentence would deprecate the seriousness of the offense.
The court's discussion of the matters detailed in La.C.Cr.P. art. 894.1 is far above that normally found adequate on review. The defendant threatened the life of the victim while brandishing a weapon. The sentence imposed is 25% below the agreed upon cap. Furthermore, the sentence is within the terms agreed to in the plea bargain set forth in the record at the time of the guilty plea. The defendant secured a substantial benefit from this plea bargain. The sentence is not constitutionally excessive.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.