756 So.2d 1272 (2000)
STATE of Louisiana, Appellee,
v.
John P. RODDY, Appellant.
No. 33,112-KA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2000.
*1274 Louisiana Appellate Project by J. Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Allen Harvey, Assistant District Attorney, Counsel for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
STEWART, J.
After a jury trial, the defendant, John P. Roddy, was convicted as charged of armed robbery, a violation of La. R.S. 14:64. The trial court sentenced the defendant to 20 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction and sentence. We affirm.

FACTS
On October 2, 1997, the defendant, John P. Roddy ("Roddy"), his cousin Larry Green ("Green"), and friend Duncan Hicks ("Hicks") traveled by bus from Los Angeles, California to Monroe, Louisiana. The young men intended to stay and visit with Myron Bolden ("Bolden"), a resident of Monroe. After arriving in Monroe, there was discussion among the men regarding bank robberies that had taken place at the Central Bank, now an Iberia Bank branch, located in downtown Monroe. Bolden portrayed the bank as an "easy target." Preparations were then made to rob this bank.
On October 3, 1997, Bolden bought gloves, borrowed a police scanner, and got a handgun and ski masks. Roddy was present when most, if not all, of these items were obtained. A pillowcase was taken from the motel where Duncan Hicks stayed. At approximately 9:00 a.m. on October 3, Hicks and Green entered the lobby of the bank with their faces covered with masks, and with Hicks waving a gun at terrified bank employees and customers. They demanded that the bank employees fill a pillowcase with money. Nearby, Bolden and Roddy waited in the getaway car, a white Chrysler LeBaron four-door. Bolden was driving and Roddy was a passenger in the car.
As Hicks and Green fled the bank on foot, they were followed by a plain clothed police officer, Major James Zambie ("Major Zambie"), who was a customer in the bank lobby when the robbery took place. Hicks and Green headed for the white LeBaron which suddenly drove off as they neared it. Major Zambie followed Hicks *1275 and Green in his unmarked patrol car as long as possible until he lost sight of them. Major Zambie then began to follow the white LeBaron which stopped when he put his emergency lights on. The two occupants of the white LeBaron were Bolden and Roddy. Major Zambie identified Roddy as a passenger in the vehicle. Hicks and Green were quickly apprehended and the money recovered.
On October 21, 1997, Roddy was charged by bill of information with armed robbery under La. R.S. 14:64, to which he entered a plea of not guilty. A jury trial commenced on September 28, 1998. On October 1, 1998, a unanimous jury found Roddy guilty as charged of armed robbery.
The evidence at trial included the testimony of Roddy's accomplices, Hicks and Green, who had entered into plea agreements with the prosecution. Both men testified as to Roddy's knowledge of and active participation in the planning and execution of the robbery. Hicks testified that the first discussion regarding a robbery took place while the men were eating at Church's Chicken. He further testified that Roddy was present when Bolden suggested that the four men rob the bank and when the layout and various details regarding the bank were discussed. Roddy was also present when the scanner, gloves and pillowcase used in the robbery were obtained. According to Hicks, Roddy saw Bolden give him the gun he used in the robbery. Finally, Hicks testified that the plan was that Bolden and Roddy were to wait in the car, around the corner from the bank, to provide the "escape" for Hicks and Green after the robbery. Although Green was less cooperative in responding to the prosecution's questions, his testimony regarding Roddy's involvement in the robbery was consistent with that of Hicks.
During trial, defense counsel made a motion to suppress a statement the defendant gave to police on October 3, 1997. The defense claimed that the recorded statement should have been excluded from the jury's consideration because it was induced by promises of a "deal" and thus involuntarily obtained. The trial judge held a free and voluntary hearing outside the presence of the jury. The lead investigator from the Monroe Police Department, Detective Billy Powell, and two FBI agents testified. These witnesses testified that the defendant signed the waiver of rights form and acknowledged his waiver of the right to remain silent both before and during the taped interview. The defendant was fully advised of his Miranda rights. They further testified that no promises or offers were made to the defendant in their efforts to obtain his statement.
On February 9, 1999, after reviewing the pre-sentence investigation report, the trial judge sentenced the defendant to 20 years at hard labor without benefit of parole, probation or suspension of sentence. At the sentencing hearing, defense counsel made an oral motion for reconsideration of sentence. The trial court denied the motion.
The defendant now claims that the evidence was not sufficient to convict him for the crime of armed robbery, and particularly asserts that the trial court erred in failing to exclude his taped statement from evidence. The defendant also claims that the trial court did not properly articulate its reasons in support of the sentence as required by La.C.Cr.P. art. 894.1 and that the sentence is excessive.

DISCUSSION

Assignments of Error Nos. 1 & 2:
In these two related assignments of error, the defendant challenges the trial court's failure to grant the motion to suppress and the sufficiency of the evidence. The defendant argues on appeal that the *1276 admission of his statement to law enforcement officers was error. He further claims that had the statement been properly excluded, there would have been insufficient evidence presented at trial to support his conviction for armed robbery.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). At a hearing on a motion to suppress a confession the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985). Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D). The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App.2d Cir.10/4/96), 681 So.2d 1023.
In State v. Jackson, 381 So.2d 485 (La. 1980), and in State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. The court first noted that as a matter of federal constitutional law, any confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. Bram v. U.S., 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The court stated in State v. Jackson, supra,
In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451.
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992), citing State v. Jackson, supra. We place great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082.
The only issue raised by the defendant in regard to his statement is that he was allegedly "promised" a "deal" or "help" and but for this promise he would not have given a statement to the police. However, the record does not support the defendant's claim. A careful review of the defendant's statement and the testimony of Detective Powell and Agents Williams and Robicheaux reveals that at some point prior to his tape-recorded statement, it was represented to the defendant that the district attorney would be informed of his willingness to cooperate by providing information regarding this robbery. Detective Powell testified that his standard statement to interrogated suspects includes the following: "If they do talk to me and cooperate, I'll communicate this to the district attorney's office that they have cooperated in the investigation."
In the instant case, there was no promise made to the defendant, nor representation that his cooperation would result in a specific benefit from the district attorney's *1277 office, such as a lesser charge or plea bargain agreement. The jurisprudence on this issue has repeatedly concluded that a remark by the police telling the defendant that the officer will "do what he can or things will go easier" will not negate the voluntary nature of the confession. State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La. 1991).
In State v. Matthews, 26,550 (La.App. 2nd Cir. 12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.6/16/95), 655 So.2d 341, this court stated:
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. State v. Morvant, 384 So.2d 765 (La.1980); [State v.] Leonard, [605 So.2d 697 (La.App. 2d Cir. 1992)] supra. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," does not negate the voluntary nature of the confession. English, supra. Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. State v. Vernon, 385 So.2d 200 (La.1980); State v. Jackson, 523 So.2d 251 (La.App. 2nd Cir.1988), writ denied, 530 So.2d 565 (La.1988).
See also, State v. Thomas, 30,490 (La. App. 2nd Cir. 4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8; State v. Taylor, 30,310 (La.App. 2nd Cir. 2/25/98), 709 So.2d 883.
Considering the consistent testimony of the three law enforcement officers and the transcript of the defendant's statement, the trial court did not err in finding that the statement was freely and voluntarily given after the defendant was advised of his constitutional rights. The defendant offered no testimony or evidence at the suppression hearing. We find that the defendant's allegation that he was induced to confess by promises is unsupported by the record. Accordingly, this assignment of error lacks merit.
The defendant's second assigned error urging insufficiency of the evidence also fails. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
The proper admission of the defendant's confession, along with the testimony of his accomplices and eyewitness, Major Zambie, is sufficient to support the defendant's conviction for armed robbery. See State v. Bishop, 571 So.2d 749 (La.App. 2nd Cir. 1990). Despite the defense's efforts to discredit the testimony of Duncan Hicks and Larry Green, their testimony was consistent and reasonable enough that the jury could accept it. The direct evidence of the defendant's knowledge of and active participation in the planning and execution of the robbery is sufficient to show that he acted as a principal in the commission of this crime. State v. Collins, 27,323 (La. App. 2nd Cir. 9/29/95), 661 So.2d 684. The defendant need not have personally wielded the gun at the victims to be guilty of armed robbery, and he may be found guilty of this offense for standing by as a lookout. State v. Dominick, 354 So.2d 1316 (La.1978); State v. Hebert, 29,062 (La.App. 2nd Cir. 1/22/97), 688 So.2d 612, writ denied, 97-0497 (La.9/5/97), 700 So.2d 503; Collins, supra at 690.
We find that the totality of the evidence, viewed in a light most favorable to the state, was sufficient to persuade a rational finder of fact that every element of the offense was proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State *1278 v. Bellamy, 599 So.2d 326 (La.App. 2nd Cir.1992), writ denied, 605 So.2d 1089 (La. 1992).

Assignments of Error Nos. 3 & 4:
In his third and fourth assignments of error, the defendant claims that the trial court failed to articulate a factual basis for the sentence imposed as required by La. C.Cr.P. art. 894.1. Also, the defendant argues that his sentence is unconstitutionally excessive.
At the sentencing hearing on February 9, 1999, defense counsel made an oral motion for reconsideration of the sentence imposed and requested a hearing date for the motion. The trial court denied the motion pursuant to La.C.Cr.P. art. 881.1(C), without permitting counsel an opportunity to state specific grounds in support of the motion. Thus, despite the requirements of La.C.Cr.P. art. 881.1(A)(2) and (D), this court will consider the sentencing errors raised by the defendant as preserved for appellate review.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight. State v. Berry, 29,945 (La.App.2d Cir.10/29/97), 702 So.2d 33; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Here, the record makes clear that the court considered the factors of article 894.1 and the matters urged by the defense prior to imposing sentence. At the sentencing hearing, the trial court stated that in sentencing the defendant it "is required to consult and be guided by the provisions of Article 894 of the Louisiana Code of Criminal Procedure." The trial court went on to note its review of the pre-sentence report containing information regarding the defendant's personal history, including his age of 22 years old at the time of sentencing, education, family ties, employment history and his prior criminal history. The trial court found it significant that the defendant had spent eight months in a California Youth Authority detention relating to an armed robbery. Information from the defendant's mother was also reviewed by the trial court. Following a review of defendant's personal background, the trial court specifically referred to and quoted from article 894.1. In so doing, the trial court noted the aggravating and mitigating factors it found applicable to the defendant and this crime. In addition, the trial court noted the use of a weapon during the robbery and the seriousness of this offense as it related to the risk of death or bodily harm to the victims inside the bank. Finally, the defendant *1279 and his counsel were permitted to comment on the findings of and information noted by the trial court before the sentence was rendered. Accordingly, we find that the defendant's claim that the trial court failed to comply with La.C.Cr.P. art. 894.1 is without merit.
The second prong of the test is whether the sentence imposed is too severe in light of the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Dunn, 30,767 (La.App. 2nd Cir. 6/24/98), 715 So.2d 641; State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
The statutory sentencing range for armed robbery, as set forth in La. R.S. 14:64, is 5 to 99 years at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant's sentence of 20 years is at the lower end of the statutory sentencing range and is not so shocking or disproportionate to the offense committed as to be unconstitutionally excessive. In other cases, this court has affirmed comparable sentences for defendants whose crimes and particular circumstances are not dissimilar to the instant case. See State v. Adger, 30,215 (La.App. 2nd Cir. 12/10/97), 707 So.2d 1000 (defendant, age 18, first-felony offender convicted on two counts of attempted armed robbery, concurrent 25-year sentences at hard labor affirmed); State v. Franklin, 30,644 (La.App. 2nd Cir. 5/13/98), 714 So.2d 162 (defendant, age 16, committed armed robbery, prior criminal history as juvenile offender, 30-year sentence at hard labor affirmed); State v. Maxie, 30,877 (La.App. 2nd Cir. 8/19/98), 719 So.2d 104, (first time felony offender with extensive juvenile record convicted of attempted second degree murder and armed robbery, 15 years at hard labor on armed robbery conviction affirmed). Under the circumstances of this case, we find that the trial court neither erred nor abused its discretion in sentencing this defendant.

CONCLUSION
For the reasons set forth above, we affirm both the defendant's conviction of armed robbery and his sentence of 20 years at hard labor without benefit of probation, parole, or suspension of sentence.
AFFIRMED.