h CARAWAY, J.
By a 10-2 vote, a jury convicted Adrian McKinnie as charged by grand jury indictment with the aggravated rape of four-year old C.L. in violation of La. R.S. 14:42. The court imposed the mandatory life sentence. On appeal, McKinnie argues that the evidence was insufficient to prove that a rape occurred and that the trial court erred in finding his confession of the crime admissible. We affirm.

*961
Facts

The victim in this case, C.L., was born on February 13, 1994. In July of 2000, C.L.’s mother, A.L., instructed C.L. and one of her sisters about the issue of sexual abuse and encouraged them to talk to her if there was ever a problem. That conversation precipitated C.L. to confess to her mother that McKinnie had inserted his fingers and penis into her vagina when the child stayed at McKinnie’s mother’s home.[1] McKinnie’s mother, Ella Stapleton, and A.L. were long-time friends. Stapleton was named C.L.’s godmother and the child spent the night in Stapleton’s home on numerous occasions. After the child told her mother about the incident, A.L. and a neighbor took C.L. to Stapleton’s home and had the child recount the complaints. When confronted with these facts, McKin-nie denied the allegations;
Thereafter, on July 14, 2000, C.L. was examined by Dr. Lawrence Chenier, a general practitioner certified in emergency medicine. C.L. repeated the history of sexual assault by McKinnie to Dr. Chenier. Physical |2examination revealed the child’s hymen was ruptured and open. The diagnosis was sexual assault by an adult. On July 14, 2000, police arrested McKinnie at his mother’s house and charged him with carnal knowledge of a juvenile. The following day, the charges were upgraded to, aggravated rape, allegedly committed on December 15,1998.
On appeal, McKinnie raises two issues. He first alleges that the evidence was insufficient to support the aggravated rape conviction. He also argues that the trial court erred in denying his motion to suppress a confession of the crime made by him on July 19, 2000.

Sufficiency of the Evidence

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Despite the lack of a motion for post-verdict judgment of acquittal by. McKinnie pursuant to La.C.Cr.P. art. 821, this court will consider | ¡^sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *962 State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508.
During the time frame of the present offense, rape was defined by La. R.S. 14:41 as the act of anal or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.[2] Aggravated rape includes a rape committed without the lawful consent of the victim when the victim is under the age of twelve years. Lack of knowledge of the victim’s age is no defense to the crime. La. R.S. 14:42(A)(4). Force is not |4an element of rape of a child under the age of twelve. State v. Taylor, 36,066 (La.App.2d Cir.6/12/02), 821 So.2d 633.
Specifically, McKinnie argues that the state failed to prove sexual penetration beyond a reasonable doubt. He further insists that his alibi witnesses demonstrated he was not at the scene of the offense when the crime was committed on December 15,1998.
C.L.’s mother, A.L., was the first person to whom the child confided the sexual abuse. A.L. testified that immediately following a talk with her two girls regarding potential sexual abuse, she overhead C.L. telling her seven-year-old sister about a previous incident of sexual abuse. A.L. then encouraged C.L. to tell her the details and not to be ashamed. While crying, C.L. told her mother that McKinnie had “told her to turn over” and had inserted “his finger or whatever” and had additionally used his “private part” in the act. A.L. had the child repeat this account to her neighbor, Carrie Martin, who happened to be Ella Stapleton’s niece. Then they all proceeded to Stapleton’s residence where C.L. again related the incident.
At trial, Dr. Chenier and Wendy Wes-terman, a psychologist and expert in forensic interviewing of abused children, both confirmed that C.L. described the defendant as having “hurt” her vagina with his penis. In Westerman’s opinion, C.L. was telling the truth, because the child did not use adult language or words to describe genitalia and the story did not appear rehearsed.
Regarding the timeline, A.L. testified that C.L. regularly stayed overnight at the Stapleton home, primarily during weekends between | ¡(December 1998 and July 2000, when C.L. initially reported the incident. A.L. reported that McKinnie lived in the house during this time. The evidence showed that McKinnie returned to his mother’s home in December 1998, after his release from the state correctional center for youth in Tallulah. Dr. Chenier testified that he gathered from the child that the abuse had occurred closer to the time of his examination, and that C.L. complained of abdominal pain. Nevertheless, he could not determine when the abuse occurred from his examination of C.L.’s vagina. He stated that the child’s condition was consistent with penile penetration, although he admitted that about ten percent of female children do not have a hymen.
After the court determined she was competent witness, C.L. testified. She stated that no one told her what to tell Westerman and that she told the truth. C.L.’s videotaped interview with Wester-man was played for the jury. C.L. said *963 her “god brother Squirt” did “something wrong” to her. He had done it “a bunch of times.” He touched her “body” with his hands and had pulled off her clothes while she was in bed. Then he touched her with his “dick” and put it inside her. It hurt. He did that “a bunch of times.” McKinnie was the only person who had ever done that. The child believed that she was six when this happened. C.L. stated that when she told McKinnie to stop, he told her “Girl, you better lay down before I hit you in your mouth.” His statement scared C.L. After the videotape was over, C.L. returned to the stand. She testified that McKinnie did what she described on the tape, and all of it was true.
| fiIn addition to the above evidence, McKinnie gave confessions to investigators following his arrest as discussed below. His various confessions described acts of fondling the child and intercourse. In his last confession, he identified December 15, 1998 as the date of his actions, the same date he was released from state custody, which was also his eighteenth birthday. The defense presented alibi witnesses, including Stapleton, who testified that McKinnie was not at the Stapleton residence on December 15,1998.
From the evidence, the time for the offense was shown to have been possible from December 15, 1998 through June or early July of 2000. At all such times, C.L. was under the age of twelve. While C.L.’s testimony was unclear regarding the actual date, she did accurately describe the fact that a rape or rapes occurred. The date is not essential to the crime of aggravated rape; therefore, it need not be alleged in the indictment. State v. Glover, 304 So.2d 348 (La.1974). The jurisprudence has also held that proof of an approximate time period for the commission of the crime of rape of a youthful victim similar the time period proven in this case is not too general or too long. State v. Brauner, 99-1954 (La.App. 4th Cir.2/21/01), 782 So.2d 52.
After reviewing the evidence in the light most favorable to the state, we find it sufficient to support McKinnie’s aggravated rape conviction. Even at her young age, C.L. consistently described to her mother, Dr. Chenier and Westerman, McKinnie’s act of rape upon her. Additionally, McKinnie’s confessions corroborate the child’s version of the events. 17Clearly, the jury believed the testimony of the victim, the physical evidence of harm, and rejected McKinnie’s recantation of his confession at trial. In these circumstances, we find the evidence sufficient to prove that sexual penetration occurred and that McKinnie had the opportunity beginning on December 15, 1998 and thereafter to have committed the act while the child was present at the Stapleton residence. On these grounds, we reject McKinnie’s arguments.

Motion to Suppress

McKinnie gave two confessions to the authorities. The first occurred on July 15, one day after his arrest. The second occurred on July 19, and he now claims this one should have been suppressed by the trial court. Specifically, McKinnie claims that he invoked his right to silence at the conclusion of the initial July 15 confession and did not initiate the subsequent conversation which occurred with' another interrogator four days later. McKinnie also contends that any statements he made on July 19 were induced by promises of leniency. The court found the confession admissible after concluding that McKinnie was advised of his rights by two different police officers and there was no evidence of coercion, threats, pressures or promises to induce the confession.
*964 At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288; State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985).s Because the credibility óf a witness' plays a key role in the determination of voluntariness, a reviewing court will defer to the ruling of the trial court in such matters unless that ruling is inadequately supported by reliable evidence. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, U.S. cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705; State v. Hansbro, 35,027 (La.App.2d Cir.9/26/01), 796 So.2d 185, writ denied, 01-2970 (La.10/25/02), 827 So.2d 1177.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D); State v. Roddy, supra. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Roddy, supra; State v. Walker, 28,577 (La.App.2d Cir.10/4/96), 681 So.2d 1023.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
The evidence presented at the motion to suppress hearing and trial was substantially the same. On July 14, 2000, Officers Shawn Mercer, Chris Heath and Lance Dunn went to Stapleton’s home and arrested McKinnie. At that time, Dunn and Heath advised McKinnie of his rights.
LThe following day, Mercer amended the booking charge to aggravated rape and informed McKinnie about the change in the charge and the penalties he faced. Mercer again advised McKinnie of his rights by using a rights waiver form. Lieutenant Jimmy Brooks was also present. Mercer and Brooks testified that Mercer read the form to McKinnie who acknowledged his understanding and signed at the bottom. Afterwards, both officers recalled that McKinnie admitted to touching C.L.’s genitals and to placing his fingers inside her vagina. Brooks exited the room to get a cassette tape to record the statements. While he was gone, McKinnie decided he didn’t want to talk anymore, but stated that he would talk with Mercer later. Mercer informed McKinnie that victim’s assistance coordinator and DA investigator, Lisa Desha “Sha” McGowan, would later come to talk with him. Brooks and Mercer testified that at no time during the interview did McKinnie ask for a lawyer; nor was he threatened, coerced or promised anything in exchange for the statement.
On July 17, 200Ó, McKinnie was brought before the court for the purpose of appointment of counsel in accordance with La.C.Cr.P. art. 230.1. On that date, McKinnie signed a document indicating that he desired to hire his own counsel. The document informed McKinnie of the charges against him as well as his right to counsel. On July 21, 2000, McKinnie submitted a second form indicating his need for appointed counsel.
Sha McGowan testified that on July 19, 2000, Officer Mercer informed her that he had arrested McKinnie for aggravated *965 rape. McGowan Instated that Mercer indicated that McKinnie wanted to talk and that he had been advised of his rights.
McGowan took Richard Thomas, an investigator with the DA’s office, with her to the interview. Both Thomas and .McGowan remembered that McGowan asked McKinnie if he wanted to talk. He agreed. At his request, McGowan showed McKin-nie the charge and penalty he was facing. McGowan testified that she asked McKin-nie a second time if he wanted to talk. McKinnie again said yes.
McKinnie related to the officers that the incident occurred at his mother’s house on December 15, 1998, the date he was released from the state correctional center. Thomas recalled that McKinnie remembered the exact date because it was his eighteenth birthday. McKinnie recounted three versions of the December 15 event for the officers. In his third version of this perverted interaction with the child, McKinnie admitted, (i) inserting his finger into the child’s vagina; (ii) rubbing his erection on her; (iii) inserting his penis about an inch into her; (iv) going back and forth, in and out, for “about five minutes;” and (v) withdrawing before ejaculation.
Thomas failed to take a tape recorder into the interview because he had no idea it was going to turn into a confession. Nevertheless, McGowan took handwritten notes of McKinnie’s statements. Copies of those notes were admitted into evidence at the state’s request. McGowan did not advise McKinnie of his rights when she interviewed him on that date. She stated that she did not threaten, make any promises or force McKinnie to make the confession. Thomas agreed that the statement was free and voluntary. 111 McGowan testified that during the interview McKinnie never asked for an attorney.
At trial, McKinnie disputed that he was advised of his rights upon his July 14, 2000 arrest and insisted that Mercer forced him to sign the waiver of rights form on July 15, 2001. He claimed that he never indicated a desire to speak further with Mercer or with the investigators. McKinnie testified that when he was interviewed by McGowan, there was a tape recorder and video camera in the room. He stated that McGowan did not take any notes of his statements and threatened him with the death penalty if he did not cooperate. McKinnie denied raping the victim or making any of the statements to Thomas and McGowan. He claimed that he did not know that the charges against him had been upgraded to aggravated rape prior to his interview with McGowan.
We first note that McKinnie failed to raise or argue his alleged invocation of silence as a ground for the motion to suppress the confession prior to trial. On these grounds, he is precluded from first raising this issue on appeal. La. C. Cr. P. art. 703; State v. Frost, 97-1771 (La.12/1/98), 727 So.2d 417, U.S. cert. denied, 528 U.S. 831, 120 S.Ct. 87, 145 L.Ed.2d 74 (1999), citing State v. Serrato, 424 So.2d 214 (La.1982). Nevertheless, while McKinnie characterized his decision to stop talking with Mercer on July 15 as an invocation of his right to silence, the officer stated that McKinnie indicated a desire to continue talking at a later date. Additionally, both McGowan and Thomas testified that McKinnie twice indicated a willingness to speak to them on July 19, 2000. Such equivocal | ^actions by McKin-nie clearly led officers to believe that he desired to continue to speak to police about the crime and are insufficient to qualify as an invocation of his right to silence.
Nor can we find the lack of Miranda warnings immediately before the July 19 statement fatal to the admissibility *966 of the confession. When a suspect has been informed of and has waived his Miranda rights during initial questioning by the police, those rights need not be repeated before every subsequent interrogation unless the evidence shows a significant break in the interrogation process, such as a request for the assistance of counsel, or police coercion. State v. Johnson, 595 So.2d 789, 794 (La.App. 2d Cir. 1992). There is no requirement that Miranda warnings be given or repeated every time a suspect is questioned, absent a showing of coercion on the part of the police. State v. Moseley, 587 So.2d 46, 50 (La.App. 2d Cir.1991), writ denied, 589 So.2d 1066 (La.1991). McKinnie does not contend on appeal that he invoked his right to counsel during any of the questioning sessions. Rather, McKinnie claims only that his confession was induced by McGowan’s promises of leniency.
At both the hearing and the trial, McGowan and Thomas each indicated that no such promises were made at the time of the statement. The trial court obviously accepted the officers’ testimony despite McKinnie’s contrary claims. Such credibility determinations are well within the province of the trial court and will not be disturbed on appeal.
In this case, ample evidence exists in the record to show that McKinnie was verbally advised of his Miranda rights twice. He also signed |13a form waiving those rights. He never asked to speak to an attorney. With no showing of any evidence of coercion, nor a request from McKinnie to speak to an attorney, we cannot say that the four-day gap between McKinnie’s confession and his advice of rights rendered the confession inadmissible. Sufficient reliable evidence exists to support the trial court’s ruling that the state proved the voluntariness of McKin-nie’s July 19 confession beyond a reasonable doubt.

Conclusion

For the reasons set forth above, we affirm McKinnie’s conviction and sentence.
AFFIRMED.

. The record shows that C.L. was four years ten months old when the opportunity for the offense first occurred, six years old when she first told her mother about it and eight at the time of trial.

. By Acts 2001, No. 301, § 1, rape was redefined to include oral sexual intercourse.