862 So.2d 1100 (2003)
STATE of Louisiana, Appellee,
v.
Robert Clansey STEWART, Appellant.
No. 37,841-KA.
Court of Appeal of Louisiana, Second Circuit.
December 12, 2003.
*1101 Bertha Moseley Hillman, Louisiana Appellate Project, for Appellant.
Robert Clansey Stewart, Pro Se.
William R. Jones, District Attorney, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
BROWN, C.J.
Defendant, Robert Clansey "Rocky" Stewart, entered a guilty plea to first degree murder without capital punishment, reserving his right to appeal the denial of his motion to suppress his confession and the evidence seized as a result thereof. See State v. Crosby, 338 So.2d 584 (La. 1976), which held that a defendant may plead guilty while reserving his right to appeal an adverse pretrial ruling. A life sentence was imposed and this appeal followed. Finding that defendant's statements were freely and voluntarily given, we affirm his conviction and sentence.

Facts
Wendi Long lived with her parents in the Martin Community in Red River Parish, Louisiana. Wendi was 21 years old when she was reported missing. She was last seen on April 14, 2001. Her disappearance was being investigated by the Red River Parish Sheriff's Office. Defendant and Wendi had attended a party on the night of April 13, 2001, and defendant had given law officers information that he had seen Wendi getting into a pickup truck with two men.
In October, November and December of 2001, while in custody in Natchitoches Parish on unrelated charges, defendant gave a series of statements to Danny Hall, an investigator with the Natchitoches Parish District Attorney's Office, which led to the discovery of Wendi Long's body in rural Red River Parish. In a statement made on December 4, 2001, defendant confessed to shooting Wendi twice in the back of the head after engaging in rough sex.

*1102 Discussion

Denial of Motion to Suppress Confession
Notwithstanding the presence of an attorney retained by his family to represent him, and the fact that he was advised of his Miranda rights, defendant argues that his confession was not free and voluntary because he was led to believe that he would receive a short sentence if he confessed. He contends that the investigator asked him whether he wanted to be an old man or a young man when he got out of prison; defendant claims that he understood this to mean that if he cooperated he would get a shorter sentence.
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. La. R.S. 15:451; La. C. Cr. P. art. 703(C); State v. Hills, 354 So.2d 186 (La.1977); State v. George, 37,492 (La. App.2d Cir.09/24/03), 855 So.2d 861; State v. Roddy, 33,112 (La.App.2d Cir.04/07/00), 756 So.2d 1272, writ denied, 00-1427 (La.05/11/01), 791 So.2d 1288; State v. Rogers, 476 So.2d 942 (La.App. 2d Cir. 1985).
Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. George, supra; State v. Roddy, supra. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. Id.; State v. Walker, 28,577 (La.App.2d Cir.10/04/96), 681 So.2d 1023.
The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless they are unsupported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Roddy, supra; State v. Dailey, 607 So.2d 904 (La.App. 2d Cir. 1992). Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Roddy, supra; State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Trotter, 37,325 (La.App.2d Cir.08/22/03), 852 So.2d 1247; State v. Henderson, 31,986 (La.App.2d Cir.08/18/99), 740 So.2d 240.
At issue are four statements given by defendant on four separate occasions before he was arrested for Wendi Long's murder. Defendant made these statements to Det. Hall while he was jailed in Natchitoches Parish on other unrelated felony charges.
Detective Danny Hall's Testimony
(1) October 23, 2001. Detective Hall initiated this first meeting. Det. Hall testified that defendant would not allow the officer to advise him of his Miranda rights, and that defendant told him that he would talk to him as long as his rights were not read to him. Defendant did not seek to suppress what he and Det. Hall discussed, as he simply agreed to help in finding the two men he claimed Wendi left with.
November 8, 2001. After the first interview, Det. Hall testified that defendant asked for another meeting. On November 8, 2001, Det. Hall met with defendant and his attorney, Laura Johnson. At that meeting, he advised defendant of his rights, although defendant refused to sign *1103 the advice of rights form. Defendant told Det. Hall that he had received a telephone call and that he knew where Wendi Long's body could be found. Defendant then gave details and Det. Hall sketched a map of the location. Thereafter, the body was found at the site described by defendant.
(3) November 16, 2001. Detective Hall stated that he met with defendant and his attorney again on November 16, 2001. According to the detective, defendant again initiated the meeting. Det. Hall again read defendant his rights and once again defendant would not sign a waiver form. A taped statement was taken. The tape and transcript show that defendant was once more advised of his rights. This time, defendant signed to indicate that he had been read and understood the rights. Detective Hall further stated that he did not threaten defendant or make any promises or inducements and noted that defendant did not appear to be under any duress.
Defendant stated that he was driving Wendi back to Natchitoches from a party they had attended in Shreveport when they stopped at a gas station. Wendi spoke with two guys in a black Chevrolet truck. Wendi introduced them to defendant as Mike and Zant. Both trucks traveled down Highway 1 South and turned down a side road. Defendant claimed that all three guys had sex with Wendi.
Mike got a shiny pistol out of his truck and defendant produced his .25 caliber pistol. They began shooting. Wendi walked in front of the guns and when he fired, she hit the ground. Defendant said that the two other guys "freaked out and left." Defendant stayed five or ten more minutes, by which time Wendi was no longer breathing. He left her lying there and drove back toward Shreveport. He threw his clip and pistol out of the truck about 15 miles from the crime scene. He then drove home, changed clothes and went to bed. In closing, Det. Hall reiterated that there had been no promises made and defendant acknowledged this to be true.
(4) November 20, 2001. Detective Hall testified that defendant was again read his rights at the November 20, 2001, interview, which was also taped. Present at this interview were Det. Hall, defendant, Laura Johnson, defendant's attorney, and Deputy Tracy Scott, an investigator from Red River Parish. Defendant identified two photographs depicting the gun he had previously described and had thrown out of his truck the night that Wendi Long was shot.
(5) December 4, 2001. This interview was also taped by Detective Hall. Defendant was again advised of his rights. At this meeting, defendant's attorney, Laura Johnson, was again present.
Defendant answered "yes" to this question asked by Det. Hall:
Okay. I spoke with your attorney, Ms. Johnson, yesterday and she has indicated to me that you were wishing to come and revisit with me concerning the case of Wendi Long, some concerns that you have had prior, uh, we've had three interviews and you were wishing to speak with me again, correct?
Defendant then recanted the portion of his previous statements regarding Mike and Zant and said that he made up these men and their alleged involvement in Wendi's disappearance and death. Defendant indicated that he was driving Wendi to Natchitoches when they stopped on a side road so that he could use the restroom. While there, they had "rough sex," during which he removed her panties with a knife.
They then began arguing. Wendi slapped defendant and he "flipped out" and shot her with the pistol that was in his back pocket. Defendant indicated that he *1104 shot Wendi in the back of her head and after she had fallen, he walked up to her and shot her again. He then dragged Wendi's body to the spot where it was eventually found. Defendant said that he took off her boots and removed her jeans, which were a light color and could have been seen from the highway in the moonlight.
At the end of his statement, defendant admitted that he had not been promised anything and confirmed that he had been advised of his rights and that his attorney had been present.
Attorney Laura Johnson's Testimony
The defense called defendant's attorney, Laura Johnson, to testify. Her testimony refuted defendant's argument concerning any promises.[1]
Ms. Johnson stated that she was initially appointed to represent defendant on some forgery charges in August 2001. Thereafter, defendant's mother retained her to represent defendant in the Wendi Long matter. Ms. Johnson stated that she was not representing defendant when he first met with Det. Hall in October. She was, however, representing defendant when he spoke with Det. Hall on November 8, 16 and 20, 2001, and December 4, 2001.
According to Ms. Johnson, she covered with defendant the potential charges and penalties, from manslaughter to murder with the possibility of the death penalty. On cross-examination, she clearly stated that no promises regarding the charge or possible punishment had been made to defendant prior to his making the statements. Ms. Johnson noted that plea discussions or sentence arrangements were not at issue, inasmuch as Det. Hall was from Natchitoches Parish and the case was being investigated by Red River Parish.
Ms. Johnson testified that her first impression of the case was that it was not a capital murder case. Such an impression would have been justified by defendant's statements prior to the one made on December 4th. She invoked the attorney-client privilege, however, when any questions were posed regarding what defendant had told her or what she had discussed with him.
Defendant's Testimony
The short direct examination did not adequately address the allegations in the motion to suppress. Defense counsel asked defendant questions designed to show that Det. Hall had promised that defendant would get neither a life sentence nor the death penalty if he cooperated with the investigation.
Q: Did he tell you ... did he give any indication to you about giving a statement or what would happen if you gave a statement?
A: Yes, sir.
Q: What did he say?
A: Well, whenever ... after I asked my second time in confession he told me that I would be a young man or old man when I got out. And he asked me which one did I choose. I told him I would choose to be a young man.
While establishing that defendant, then 25 years old, had dropped out of high school and had not had a course in civics, the defense did not show how this lack of education rendered him incapable of understanding the choices he made. On cross-examination, defendant testified that his attorney was incorrect and that she did *1105 hear the investigator's statement that defendant could choose whether he wanted to be a young man or an old man when he got out of prison. Defendant admitted, however, that he was not specifically told that he would not get the death penalty. Additionally, the state was able to elicit on cross-examination that defendant had signed a series of rights forms which he understood and waived. The state also established that defendant had a number of prior felony convictions which demonstrated his familiarity with the judicial process and his knowledge of the right to remain silent.
The best evidence in determining whether defendant's statements were given voluntarily and knowingly and without any inducement, deceptions or "ploys" as alleged in the motion to suppress are the audio tapes themselves. After listening to the tapes, it is obvious that defendant wanted to clear his conscience by confessing what he had done.
The trial court's determination that all of defendant's statements were free and voluntary is entitled to great weight. The tapes themselves are indicative of what transpired. Defendant failed to introduce anything of merit to justify disturbing the finding of the trial court. This assignment of error is meritless.
Denial of Motion to Suppress Evidence
According to defendant, any evidence obtained as a result of his statements is tainted as "fruits of the poisonous tree" and therefore inadmissible. In support, defendant relies upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its progeny, which hold that evidence located as a result of information obtained from an illegal arrest, search or confession should be suppressed. Defendant's confession(s) led to the discovery of the body of Wendi Long, as well as a .25 caliber pistol, bullet clip, bullets and a knife.
Because defendant's statements were admissible, the evidence recovered as a result of defendant's statements are also admissible. See State v. Williams, 420 So.2d 1116 (La.1982). This assignment of error is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are affirmed. AFFIRMED.
NOTES
[1] Ms. Johnson's withdrawal from representation was based upon defendant's inability/unwillingness to compensate her. This point was emphasized at the hearing on the motion to suppress.