GASKINS, J.
 

 1 ,The defendant, Anthony Ashley, was convicted of aggravated kidnapping, attempted forcible rape, first degree robbery, and aggravated flight from an officer. He was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence on the conviction of aggravated kidnapping, 20 years at hard labor on the conviction of attempted forcible rape, 40 years at hard labor without benefit of probation, parole or suspension of sentence on the conviction of first degree robbery, and two years at hard labor on the conviction of aggravated flight from an officer. The trial court directed that the latter three sentences be served consecutive to each other but concurrent with the life sentence. The defendant now appeals. The defendant’s convictions and sentences are affirmed.
 

 FACTS
 

 Shortly after 9:00 p.m. on March 12, 2007, the 19-year-old victim was abducted after making a withdrawal from an automatic teller machine (ATM) on Greenwood Road in Shreveport, Louisiana. The perpetrator forced the victim into her black Nissan car, bound her hands and feet, threatened her with a gun he claimed to be carrying, and withdrew money from her bank account at a different ATM. He also forced the victim to perform oral sex upon him and repeatedly struck her in the face and head. While holding the victim captive, the defendant stopped at various times to purchase drugs and drug paraphernalia. In addition to using the drugs himself, he tried to force the victim to partake of them as well.
 

 | gEventually, the victim, who untied her feet without the assailant’s knowledge, was able to escape. When the perpetrator stopped the car at the intersection of Cad-do and Common streets, the victim spotted two patrol cars. She jumped out of the vehicle and ran toward the patrol cars as the perpetrator sped off. One of the two patrol cars took off in pursuit of the victim’s vehicle, which it found crashed into a utility pole and abandoned.
 

 After ATM security photos were televised, the police received a tip identifying the defendant as the perpetrator, and a warrant for his arrest was issued. In the early hours of March 16, 2007, the defendant was taken into custody by a canine unit of the Shreveport Police Department (SPD). He was given medical treatment for a dog bite he received during his capture. Because the officers suspected that the defendant might be under the influence of some sort of intoxicant, they waited until late afternoon to speak with him. At that time, he gave a statement to police in which he eventually admitted his role in the offenses.
 

 On April 11, 2007, the defendant was indicted for one count of aggravated rape, one count of aggravated kidnapping, one count of first degree robbery, and one count of aggravated flight from an officer.
 

 Prior to the commencement of the defendant’s trial, a “free and voluntary” hearing was conducted to determine whether the statements made by the defendant to law enforcement officers were
 
 *1051
 
 admissible. Testimony was given by Corporal Christopher Yarbrough, one of the interviewing officers, and the defendant. The trial court concluded that the ^defendant's statements were made freely and voluntarily and were thus admissible at trial and usable in the opening statements.
 

 At the defendant’s jury trial in October 2008, the state presented the testimony of the victim, who described her kidnapping from the Greenwood Road ATM and her ensuing ordeal. She recounted the defendant accosting her after she finished her transaction. He took her cell phone and keys and then forced her into her car through the driver’s side door. A video from the ATM on Greenwood Road was introduced into evidence and played for the jury during the victim’s testimony; it corroborated the victim’s account of the defendant’s conduct at that ATM. Photos from the second ATM showed the defendant using the victim’s card to withdraw money from her account.
 

 Also testifying for the state were Corporal John Flores and Officer Hy Phan of the SPD. Corporal Flores testified that the “very hysterical” and crying victim jumped from a black Nissan and ran to his patrol car; she had blood on her shirt. She reported her abduction from an ATM on Greenwood Road and described the ensuing offenses committed by the defendant. The exchange was recorded on the patrol car’s audio and video recorders and was played for the jury. The jury was also shown photographs taken by Corporal Flores depicting the victim’s injuries, including the marks around her ankles and wrists where she had been bound. Officer Phan testified as to his pursuit of the Nissan, which ended in his discovery of the car crashed into a pole and abandoned. The dashboard camera recording of Officer Phan’s pursuit was also shown to the jury.
 

 _JjTwo members of the SPD crime scene unit testified about their processing of the victim’s Nissan. Among the items recovered from the car were blood on the dashboard, a receipt showing the withdrawal of $20 from an ATM on Greenwood Road at 9:16 p.m. on the night in question, and a cigarette butt. Testing demonstrated that the DNA profile obtained from the cigarette butt was consistent with the defendant’s DNA. A palm print matching the defendant was found on the rear passenger side door.
 

 The defendant’s recorded statement to the police was played for the jury. Initially, the defendant portrayed himself as receiving a ride from the willing victim, who indicated a desire to do drugs and “party” with him. He claimed that the victim tried to force oral sex on him but he rebuffed her because he is a homosexual. He also asserted that when she wanted to return the car to her father, his refusal to comply prompted an exchange of blows between them, with his being delivered in self-defense. However, during the course of the interview, as the officers confronted him with video and photographic evidence, the defendant’s story changed. He eventually confessed various details which were consistent -with the victim’s version of events. These included the fact that he forced her into the vehicle, that he tied her hands, that he tried to keep her scared, that he instructed her not to move when they made stops, and that he kept reaching in his pocket to give the impression of the existence of a weapon in order to scare her. He also admitted that he forced her to perform oral sex after she refused at least twice.
 

 |sAt trial, the defendant testified and again attempted to portray the victim as a willing participant in drug use who tried to force him into unwanted sexual activity. As to his taped statement, he testified that
 
 *1052
 
 he only made those admissions because he was hungry, on pain medication, and scared. He claimed that during breaks in the interrogation, the police were telling him that unless he confessed he was going to get the death penalty. He additionally contended that they promised that they would get him treatment for his drug addiction and simply release him. On cross-examination, he asserted that the reason he is only heard asking for food once toward the end of the statement is because the other requests were edited out.
 

 The jury returned verdicts of guilty as charged of aggravated kidnapping, first degree robbery and aggravated flight from an officer and a responsive verdict of attempted forcible rape on the aggravated rape charge. Motions for post-verdict judgment of acquittal and new trial were denied. The defendant was sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence on the conviction of aggravated kidnapping, to 20 years at hard labor on the conviction of attempted forcible rape, 40 years at hard labor without benefit of probation, parole or suspension of sentence on the conviction of first degree robbery, and two years at hard labor on the conviction of aggravated flight from an officer, the latter three sentences to be served consecutive to each other but concurrent with the life sentence. The defendant was also sentenced to concurrent 30-day jail terms on each count in the event of his failure to pay | (¡court costs. The defendant then filed a motion to reconsider the sentences imposed as excessive; the motion was denied.
 

 The defendant appealed. Defense counsel filed two assignments of error pertaining to sufficiency of the evidence and excessive sentences. The defendant filed 17
 
 pro se
 
 assignments of error.
 

 SUFFICIENCY OF EVIDENCE AND DOUBLE JEOPARDY
 

 Defense counsel argues that the jury’s verdict of guilty on the crimes of first degree robbery and attempted forcible rape are inconsistent with a finding that he committed an aggravated kidnapping because the first two indicate a finding that he used force or the threat thereof to rob the victim and to attempt to rape her and therefore he could not have obtained them by playing on her hopes of securing release. The defendant complains that to conclude otherwise is to subject him to double jeopardy. The state argues that the convictions are not inconsistent in that the defendant used more than one means of accomplishing his goals.
 

 In a related
 
 pro se
 
 assignment of error, the defendant argues that the trial court erred in denying his pretrial motion to quash the bill of information raising a plea of double jeopardy.
 

 Law
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if |7a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The standard of appellate review for a sufficiency of the evidence claim is wheth
 
 *1053
 
 er, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App. 2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582;
 
 State v. Parker,
 
 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 2007-2053 (La.3/7/08), 977 So.2d 896.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra; State v. Allen,
 
 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 La. R.S. 14:44 defines aggravated kidnapping as follows:
 

 Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure |9a release of the person under the offender’s actual or apparent control:
 

 (1) The forcible seizing and carrying of any person from one place to another; or
 

 (2) The enticing or persuading of any person to go from one place to another; or
 

 (3) The imprisoning or forcible secreting of any person.
 

 The Louisiana Supreme Court has held that the crucial question in determining whether an aggravated kidnapping has occurred is not whether the defendant intended to release the victim at either the outset of the crime or indeed at any point during the crime but “whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim’s fear and hope of eventual release in order to
 
 *1054
 
 gain compliance with his demands.”
 
 State v. Arnold,
 
 548 So.2d 920 (La.1989).
 

 A person cannot twice be put in jeopardy for the same offense. U.S. Const, amend. V; La. Const, art. 1, § 15; La. C. Cr. P. art. 591;
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980). Louisiana uses both the
 
 “Blockburger
 
 test” and the “same evidence test” in determining whether double jeopardy exists.
 
 State v. Ceasar,
 
 37,770 (La.App. 2d Cir.10/9/03), 856 So.2d 236. In
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader “same evidence” test which dictates that:
 

 |10If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
 

 State v. Steele,
 
 387 So.2d 1175 (La.1980);
 
 State v. Robertson,
 
 511 So.2d 1237 (La.App. 2d Cir.1987),
 
 writ denied,
 
 516 So.2d 366 (La.1988). This test depends on the proof necessary for a conviction, not the evidence that is actually presented at trial.
 
 State v. Knowles, supra.
 

 Discussion
 

 The defendant’s appellate counsel argues that the jury’s conviction of the defendant on first degree robbery means they concluded that the taking of the victim’s money was accomplished by the use of force or intimidation, a requirement of the crime. Likewise, he argues that the jury’s conviction of attempted forcible rape means the jury concluded that the oral sex, or attempt thereof, was accomplished through the use of force or threats, a requirement of the crime of forcible rape. That being the case, the defendant posits that the taking of the victim’s money and sex could not have been accomplished by playing on her hope of eventual release.
 

 While the state makes a valid argument that the defendant could have used more than one means to accomplish his goals and that the victim’s motivations for abiding by his demands could have been twofold, the court need not reach that question because the defendant’s argument assumes a burden of proof not imposed by the definition of the crimes. To prove aggravated kidnapping, the state merely needed to show that the defendant forcibly seized and carried the victim from one place to another with the
 
 intent
 
 thereby to force the victim to give up anything of apparent present or [ nprospective value in order to secure a release. Accordingly, to the extent that the evidence showed the defendant abducted the victim with the intent of forcing her to give up something of value by playing on her fears and hope of eventual release, it is irrelevant how the defendant ultimately gained something of value from the victim. How an offender extricates something of value from the victim of an aggravated kidnapping is as irrelevant as whether he extricates something of value, as long as the abduction of the person in the manner described in the statute was done with the intent to obtain something of value in exchange for what the victim perceives is her ultimate release.
 

 A review of the record reveals more than ample evidence supporting the conviction of aggravated kidnapping. The victim was forcibly seized in the parking lot of a bank branch where she had been using an ATM and forced with the use of an apparent weapon to get in her vehicle
 
 *1055
 
 with the defendant. The defendant then took the victim from one place to another as he drove her around Shreveport making various stops. On the question of whether he had the intent to take something of value, the examples are abundant. The defendant demanded her cell phone and keys at the outset, he took her bank card and demanded her personal identification number (PIN) for its use, he used her car to drive to a drug dealer’s home, he demanded that she perform oral sex on him, he tried to force her to smoke crack cocaine, and so on. The victim testified that at various times during the incident he told her that if she complied with a directive, he would release her in 15 minutes. Additionally, the defendant’s actions implied the | ^victim’s release was a possibility. As both the victim and the defendant testified, he blindfolded her when he went to purchase drugs in an effort to keep the victim from identifying the location to police. Accordingly, the victim could have easily deduced that if he feared her identifying the location to law enforcement, the defendant at least contemplated her potential release.
 

 Nor do the defendant’s conviction for first degree robbery, attempted forcible rape and aggravated kidnapping violate his constitutional right against double jeopardy. To prove the crime of attempted forcible rape, the state was required to establish that the defendant actively desired to commit rape by preventing the victim from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believed that such resistance would not have prevented the rape and that he did an act in furtherance of his goal. La. R.S. 14:42.1 and La. R.S. 14:27;
 
 State v. Hannon,
 
 37,351 (La.App. 2d Cir.8/20/03), 852 So.2d 1141. The crime does not require proof that the victim was seized, imprisoned or secreted. The victim in this instance resisted the defendant’s efforts to force her to perform oral sex on him but was repeatedly struck in the face and head by the defendant who, by the hair on her head, forced the victim’s face onto his exposed penis.
 

 First degree robbery involves the taking of anything of value belonging to another from the person of another by the use of force or intimidation when the person has been induced to a subjective belief that the defendant is armed with a dangerous weapon and the victim’s belief is | ^objectively reasonable. La. R.S. 14:64.1;
 
 State v. Thomas,
 
 43,783 (La.App. 2d Cir.1/14/09), 2 So.3d 1181. It too does not require the seizing, imprisoning or secreting of the victim. As the victim’s testimony demonstrated, the defendant in the instant case indicated that he had a gun and repeatedly made reference to blowing her head off with it. He used these threats specifically in forcing her to give him her ATM card and PIN code, which he used to withdraw $40.00 from her account.
 

 As noted above, to prove aggravated kidnapping, the state had to show that the defendant seized, imprisoned or secreted the victim with the intent of forcing the victim or another person to give up something of value in order to secure the victim’s release. It does not require the defendant to induce the victim to believe he has a dangerous weapon, it does not require him to actually take anything of value, and it does not require him to attempt or succeed in having vaginal, oral or anal intercourse with the victim. In the present case, the state showed that the defendant abducted the victim and took her from one place to another with the intent of forcing her to give up the use of her car, money and sex in the hope of being set free. The fact that in some cases he had to resort to additional crimes to actually
 
 *1056
 
 get those things does not give rise to a double jeopardy claim.
 

 These assignments of error are without merit.
 

 EXCESSIVE SENTENCE
 

 The defendant argues that the trial judge failed to articulate the aggravating and mitigating circumstances warranting the consecutive sentences imposed for the convictions of first degree robbery, attempted |,forcible rape and aggravated flight from an officer, and that the sentences imposed are constitutionally excessive. The state argues that the sentences imposed by the court are justified by the severity of the defendant’s conduct.
 

 Law
 

 La. C. Cr. P. art. 881.1 precludes the defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Duncan,
 
 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164.
 

 Since the defendant’s motion for reconsideration merely alleged that the sentence is excessive, under
 
 State v. Mims, supra,
 
 he is “simply relegated to having the appellate court consider the bare claim of excessiveness.” This bare claim preserves only a claim of constitutional excessiveness,
 
 Mims, supra; State v. Lofton,
 
 41,423 (La.App. 2d Cir.9/27/06), 940 So.2d 702,
 
 writ denied,
 
 2006-2952 (La.9/28/07), 964 So.2d 359. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Livingston,
 
 39,390 (La.App. 2d Cir.4/6/05), 899 So.2d 733;
 
 State v. White,
 
 37,815 (La.App. 2d Cir.12/17/03), 862 So.2d 1123.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. |1Bart. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Landos,
 
 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App. 2d Cir.8/13/08), 989 So.2d 259,
 
 writ denied,
 
 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574
 
 *1057
 
 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is 11ficonsidered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato, supra; State v. Robinson,
 
 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
 

 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory.
 
 State v. Derry,
 
 516 So.2d 1284 (La.App. 2d Cir.1987),
 
 writ denied,
 
 521 So.2d 1168 (La.1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Johnson,
 
 42,323 (La.App. 2d Cir.8/15/07), 962 So.2d 1126.
 

 A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.
 
 State v. Johnson, supra; State v. Boudreaux,
 
 41,660 (La.App. 2d Cir.12/13/06), 945 So.2d 898,
 
 writ denied,
 
 2007-0058 (La.11/2/07), 966 So.2d 591. Among the factors to be considered are the defendant’s criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the harm done to the victims; whether the defendant constitutes an unusual risk of danger to the public; the potential for the defendant’s | ^rehabilitation; and whether the defendant has received a benefit from a plea bargain.
 
 State v. Johnson, supra; State v. Boudreaux, supra.
 

 As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses.
 
 State v. McKinney,
 
 43,061 (La.App. 2d Cir.2/13/08), 976 So.2d 802;
 
 State v. Woods,
 
 41,420 (La.App. 2d Cir.11/1/06), 942 So.2d 658,
 
 writs denied,
 
 2006-2768, 2006-2781 (La.6/22/07), 959 So.2d 494.
 

 Discussion
 

 The defendant received the maximum sentences for the convictions of first degree robbery, attempted forcible rape and aggravated flight from an officer and was ordered to serve them consecutively. The defendant correctly points out that the record contains no discussion of the criminal or social history of the defendant and no discussion of the mitigating factors.
 

 However, the defendant has failed to urge any mitigating factors which the trial court failed to consider other than his reliance on his crack cocaine use. Furthermore, despite the trial court’s failure to identify them as such, the trial court did discuss the aggravating factors during the sentencing hearing. The trial court specifically detailed the heinous facts of the crime, including the threats of death made to the victim, the apparent capacity to carry the threat out, and the sexual violation of the victim, which the court deemed in their totality to constitute “torture” of the victim. A thorough reading of the record makes it abundantly clear that the actions of the defendant in the present case are those of a worst offender justifying both maximum and consecutive sentences. The physical and emotional violence 118done to this teenage victim while being abducted in her own car and vicious
 
 *1058
 
 ly abused for a period of time — conduct for which the defendant has failed to take responsibility or show any remorse — precludes a conclusion of manifest abuse of discretion by the trial judge in imposing sentences within the statutory limits.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 2002-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. The defendant’s sentences are neither grossly disproportionate to the severity of the offenses nor shocking to the sense of justice.
 

 This assignment is therefore without merit.
 

 COMPLETENESS OF RECORD
 

 In five of his
 
 pro se
 
 assignments of error, the defendant contends that the record is not complete. Specifically, he asserts the following: on 13 occasions, audio statements were not transcribed; on 13 occasions, bench conferences were not transcribed; on 32 occasions, the court reporter, who was not sworn and qualified as a sign language interpreter, transcribed “sign language,” i.e. head movements by the victim; the redaction of the transcript provided to the defendant for appellate purposes, as authorized under La. R.S. 46:1844, is an unconstitutional deprivation of a full appellate record; and he was not provided with a voir dire transcript for appellate review.
 

 Law
 

 The state constitution provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const, art. I, |19§ 19. In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is statutorily required. La. C. Cr. P. art. 843.
 

 A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause a reversal of a defendant’s conviction.
 
 State v. Allen,
 
 95-1754 (La.9/5/96), 682 So.2d 713;
 
 State v. Campbell,
 
 2006-0286 (La.5/21/08), 983 So.2d 810,
 
 cert. denied,
 
 — U.S. —, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008). Indeed, an incomplete record may nonetheless be adequate for appellate review.
 
 State v. Hawkins,
 
 96-0766 (La.1/14/97), 688 So.2d 473. A defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record.
 
 State v. Campbell, supra.
 

 Discussion
 

 On the absence from the appellate record of any transcripts of the recordings played for the jury, the defendant argues that appellate counsel cannot determine the presence of any cognizable claims since he was not trial counsel. This assignment lacks merit since the recordings themselves are part of the appellate record and are the best evidence of what is contained therein.
 

 As to the unrecorded bench conferences, the defendant failed to make an objection, and as such failed to preserve the issue for review. La. C. Cr. |2qP. art. 841. Also, the defendant fails to show that the unrecorded conferences prevented him from presenting relevant evidence, or to show what prejudice, if any, resulted from the absence in the record of the substance of the conferences absent which the defendant cannot prevail.
 
 State v. Castleberry,
 
 1998-1388 (La.4/13/99), 758 So.2d 749,
 
 cert.
 
 
 *1059
 

 denied,
 
 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999);
 
 State v. Brumfield,
 
 1996-2667 (La.10/20/98), 737 So.2d 660,
 
 cert. denied,
 
 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999);
 
 State v. Blank,
 
 2004-0204 (La.4/11/07), 955 So.2d 90,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). Lastly, a review of the record for the instances cited by the defendant indicates that almost all the bench conferences of which he complains were held just before a session was to begin or before a session was adjourned, a likely indication that the content of the conference was administrative rather than substantive.
 

 The defendant’s complaint that the court reporter’s transcription of the witnesses’ nonverbal responses of affirmative and negative nods of the head was “impermissible” and deprived him of “due process” is also without merit. The basis of the defendant’s argument is that a court reporter is unsworn and unqualified to interpret sign language. Because the victim’s nonverbal responses constitute a part of the proceedings in the court below, the court reporter did not err in including them in the record. Nor has the defendant cited any authority for the proposition that a certified sign language interpreter is required to interpret the cross-cultural and widely accepted head gestures indicating agreement and disagreement. The [ .¿i defendant has not challenged the accuracy of the parenthetical references concerning the victim’s nonverbal actions, so striking such references from the record is unnecessary.
 

 The defendant also claims that the redacted copy of the appellate record is in violation of his right to a complete record. The record was redacted in accordance with La. R.S. 46:1844(W) so as to remove any information identifying the victim of a sex crime. This redaction, required by law, does not ordinarily prevent comprehension of the record and the defendant cites no specific instances in the present case to that effect. Furthermore, the defendant is well aware of the victim’s name which he used repeatedly during his testimony at trial.
 

 Lastly, the defendant complains of the absence of a transcript of jury voir dire. This matter was also raised in a motion denied by this court on July 16, 2009. It should first be noted that the Louisiana Constitution requirement of a “complete record” is limited to the “evidence upon which the judgment is based.” Jury voir dire is not evidence. Furthermore, the defendant makes no allegations as to any errors which occurred during the jury selection and the minutes do not reflect that any objections were raised during that portion of the trial. Absent a showing of prejudice, Louisiana courts have recognized that a complete appellate review of a defendant’s convictions and sentences can be accomplished even when there are missing portions of the trial record.
 
 State v. Thomas,
 
 92-1428 (La.App. 4th Cir.
 
 p/26/94),
 
 637 So.2d 1272,
 
 writ denied,
 
 94-1725 (La.11/18/94), 646 So.2d 376,
 
 cert. denied,
 
 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995).
 

 Accordingly, these assignments are without merit.
 

 FREE AND VOLUNTARY CONFESSION
 

 The defendant argues that the trial court erred in denying his motion to suppress the confession because of his unre-futed testimony that he had been threatened and induced by false promises into confessing and because he was under the influence, hungry and in pain during the confession.
 

 
 *1060
 

 Law
 

 Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D);
 
 State v. Bowers,
 
 39,970 (La.App. 2d Cir.8/19/05), 909 So.2d 1038;
 
 State v. Roddy,
 
 33,112 (La.App. 2d Cir.4/7/00), 756 So.2d 1272,
 
 writ denied,
 
 2000-1427 (La.5/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his
 
 Miranda
 
 rights.
 
 State v. Bowers, supra; State v. Franklin,
 
 35,268 (La.App. 2d Cir.12/19/01), 803 So.2d 1057,
 
 writ denied,
 
 2002-0352 (La.2/7/03), 836 So.2d 85;
 
 State v. Roddy, supra.
 

 The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court’s conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on. appeal unless not supported by thej^evidence.
 
 State v. Thibodeaux,
 
 1998-1673 (La.9/8/99), 750 So.2d 916,
 
 cert. denied,
 
 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000);
 
 State v. Morrison,
 
 43,815 (La.App. 2d Cir.1/14/09), 999 So.2d 1197. Great weight is placed upon the trial court’s factual determinations because of its opportunity to observe witnesses and assess credibility.
 
 State v. Roddy, supra.
 
 Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily.
 
 State v. Bowers, supra.
 

 A mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will “do what he can” or “things will go easier,” does not negate the voluntary nature of the confession.
 
 State v. Roddy, supra; State v. Thomas,
 
 30,490 (La.App. 2d Cir.4/8/98), 711 So.2d 808,
 
 writ denied,
 
 1999-0331 (La.7/2/99), 747 So.2d 8;
 
 State v. Matthews,
 
 26,550 (La.App. 2d Cir.12/21/94), 649 So.2d 1022,
 
 writ denied,
 
 95-0435 (La.6/16/95), 655 So.2d 341.
 

 Intoxication may render a confession involuntary if it negates a defendant’s comprehension and renders him unconscious of the consequences of what he is saying; whether intoxication exists and to a degree sufficient to vitiate voluntariness are questions of fact.
 
 State v. Narcisse,
 
 426 So.2d 118 (La.1983),
 
 cert. denied,
 
 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983);
 
 State v. Bowers, supra.
 
 However, the mere fact of drug or alcohol intoxication is insufficient standing alone to render a confession involuntary.
 
 State v. Robertson,
 
 40,626 (La.App. 2d Cir.4/12/06), 927 So.2d 629,
 
 writ denied,
 
 2006-1449 (La.12/15/06), 944 So.2d 1272. See
 
 State v. Davis,
 
 92-1623 (La.5/23/94), 637 So.2d 1012,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), where the confession was voluntary although the defendant had smoked three or four cocaine rocks the night before his 11:00 p.m. statement, as well as consumed several beers the day he confessed.
 

 Discussion
 

 At the free and voluntary hearing, the defendant testified that shortly after his arrest he was taken to the hospital for stitching of a dog bite he received from a police dog during his apprehension. He stated that at the hospital he was given painkillers and a prescription for painkillers which was filled the next day at the jail. He claimed that during his alleged confession he was on those painkillers and still “high” from crack cocaine. No corroborating evidence was given regarding
 
 *1061
 
 the existence of the prescription, the fact that it was filled by the jail, or what particular painkiller the defendant claimed to be on. He also claimed that he was in pain from the dog bite and hungry. He asserted that he felt threatened because he was told that he would not be allowed to eat until he answered all their questions.
 

 The recording itself indicates that the defendant mentioned eating twice; when the comments were made, no one is heard indicating that food would be withheld until a confession was forthcoming. To the contrary, the officers responded in a positive manner that the defendant would be fed upon his return to the jail. Furthermore, the sound and content of the defendant’s speech during the statement does not bear any of the earmarks [ ^of someone under the influence of an intoxicating substance, such as slurred speech or disorientation. Nor is there any indication that the confession was being made under the influence of fear, duress, intimidation, inducements, or promises.
 

 Contrary to the defendant’s allegations that his statements were unrefuted, the state relied on the testimony of one of the interrogating officers, Corporal Yar-brough. He indicated that at the time of the defendant’s arrest, about 1:00 a.m., the defendant appeared to be under the influence of some intoxicating substance and, therefore, police did not take his statement until approximately 15 hours later. In the interim, the defendant was taken to the hospital where he received stitches for the dog bite and was then transported to the jail. At the scene of the defendant’s arrest, the corporal asked the defendant if he had been advised of his rights to which the defendant replied in the affirmative. Corporal Yarbrough testified that at 4:25 p.m. that same day he conducted an interview with the defendant after re-reading him his
 
 Miranda
 
 rights and after the defendant signed a card acknowledging being informed of those rights and waiving them. Corporal Yarbrough indicated that the interview took place over approximately two to two and a half hours during which the defendant no longer appeared to be under the influence of any drugs or alcohol, and was not threatened or promised anything to elicit the statement made.
 

 Based upon the above, we concluded that the trial court’s finding that the defendant’s statement was made freely and voluntarily is supported by the evidence.
 

 This assignment of error lacks merit.
 

 I^MENTION OF CONFESSION IN OPENING STATEMENT
 

 In this
 
 pro se
 
 assignment, the defendant contends that the state violated the provisions of La. C. Cr. P. art. 767 by advertising the defendant’s confession in its opening statement. La. C. Cr. P. art. 767 provides:
 

 The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case.
 

 Because the defendant’s statements to the police had already been ruled as admissible in the pretrial hearing, the state was entitled to refer to them as a “confession” in the opening statement.
 
 State v. Taylor,
 
 30,310 (La.App. 2d Cir.2/25/98), 709 So.2d 883. Therefore, this assignment lacks merit.
 

 FAILURE TO READ INDICTMENT TO JURY
 

 The defendant argues that during the clerk’s reading of the grand jury’s indictment, she failed to state whether it was returned a true bill, what date it was returned and whether the jury foreperson signed it. The only provision pertaining to
 
 *1062
 
 the reading of the indictment at trial is found in La. C. Cr. P. art. 765, which merely requires “the reading of the indictment.” The transcript shows that the date of the indictment, its contents, and the signature of the district attorney were all read into the record.
 

 This assignment lacks merit.
 

 [^PROSECUTORIAL MISCONDUCT
 

 The defendant alleges at least 30 incidents of prosecutorial misconduct. This assignment of error is patently without merit. While the defendant makes numerous references to portions of the record as illustrations of alleged prosecutorial misconduct, our review reveals that the conduct alleged is either not supported by the content of the record or the conduct simply does not constitute misconduct.
 
 [1]
 

 USE OF INADMISSIBLE HEARSAY EVIDENCE
 

 The defendant itemizes six instances in which he alleges that hearsay evidence was introduced denying him his constitutional right to confront his accuser. However, some of the cited instances did not even involve hearsay while others involved exceptions to the hearsay rule. We also note some of the statements were advantageous to the defendant. Furthermore, even assuming
 
 arguendo
 
 that any of these statements were hearsay, they were harmless due to the overwhelming evidence of the defendant’s guilt.
 

 This assignment of error is without merit.
 

 INTRODUCTION OF CRIME LAB REPORT
 

 In this
 
 pro se
 
 assignment the defendant complains about the introduction of the crime lab report indicating that his DNA was found on a cigarette butt recovered from the victim’s vehicle without the testimony of any witness to identify the report and attest that it is what it purports to be. The state gave proper notice of its intent to introduce the certified crime lab | ^report pursuant to La. R.S. 15:501 and subsequently introduced the report at trial without objection from the defendant. The failure of the defense to contemporaneously object to this evidence waives this court’s review of the issue on appeal. La. C. Cr. P. art. 841;
 
 State v. Robbins,
 
 43,129 (La.App. 2d Cir.3/19/08), 979 So.2d 630.
 

 However, to the extent any error might have occurred, it would have been harmless. In his own testimony, the defendant identified himself as the individual who approached the victim at the ATM, who got in her vehicle with her, and who drove around with her until she jumped out of the vehicle and into a nearby patrol unit. The DNA evidence did nothing but place the defendant at the scene of the crime, a fact which the defendant does not deny.
 

 JURY CHARGE
 

 The defendant argues that the trial court erred while charging the jury by stating that reasonable doubt does not mean “proof to an absolute certainty” on two separate occasions.
 

 La. C. Cr. P. art. 804(A) provides, in pertinent part, that the court shall charge the jury that a person accused of a crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt. It also provides that
 
 *1063
 
 the court may, but is not required to, define “reasonable doubt.”
 

 The actual jury charge on reasonable doubt in this case was:
 

 Proof beyond a reasonable doubt is a phrase that is almost self-explanatory. Reasonable doubt does not mean all possible doubt, but means doubt based upon a reason. If, after you have considered the evidence and the law applicable, there is doubt |2i)in your mind as to the guilt of the accused, which doubt is based upon a reason, or for which doubt you can express a reason, then the defendant is not guilty. However, “proof beyond a reasonable doubt” does not mean proof to an absolute certainty.
 

 In
 
 State v. Gaddis,
 
 36,661 (La.App. 2d Cir.3/14/03), 839 So.2d 1258,
 
 writ denied,
 
 2003-1275 (La.5/14/04), 872 So.2d 519,
 
 cert. denied,
 
 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005), this court rejected an argument that the above language was constitutionally infirm.
 

 This assignment is without merit.
 

 INTRODUCTION OF ORAL STATEMENTS
 

 The defendant complains that the state introduced oral statements by him without providing the mandatory notice of their intended use required by La. C. Cr. P. art. 768. The statements to which the defendant is referring are the ones he made to Corporal Yarbrough at the scene of his arrest and at the hospital shortly thereafter.
 

 La. C. Cr. P. art. 768 provides:
 

 Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
 

 As per the statutory language, written notice is not required when the defendant has been granted pretrial discovery, which the defendant in the present case was. The existence of the two statements to which the defendant is referring was made known to the defendant in police reports supplied as discovery responses more than a year before trial. Accordingly, there is no question that the discovery provided to defendant afforded Insufficient notice of the existence of the oral statements. This assignment of error is without merit.
 

 SENTENCING FACTORS
 

 In this
 
 pro se
 
 assignment of error, the defendant argues that the sentences imposed by the trial court should be reversed as having been based on the erroneous conclusion that the attack on the victim lasted for more than two hours. As noted above, the defendant’s sentence is subject to the provisions of La. C. Cr. P. art. 881.1 precluding consideration by the court of appeal of sentencing arguments not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness.
 
 State v. Mims, supra; State v. Lofton, supra.
 
 Furthermore, the sentence on the defendant’s conviction of aggravated kidnapping was a mandatory life sentence and, therefore, the length of the abduction was irrelevant to the sentence imposed.
 

 This assignment is without merit.
 

 INEFFECTIVE ASSISTANCE
 

 Law
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth
 
 *1064
 
 Amendment to the U.S. Constitution. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires that his conduct be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment.
 
 State v. Tilmon,
 
 38,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607,
 
 writ denied,
 
 2004-2011 (La.12/17/04), 888 So.2d 866. Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 Strickland, supra.
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (PCR) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ellis, supra.
 

 Trial Counsel
 

 The record in the instant case is sufficient to resolve the conclusory allegations made by the defendant of ineffective assistance by trial counsel. Review of the record reveals that trial counsel appeared to employ appropriate trial strategy and tactical decisions. In fact, we note that |S2defense counsel’s able trial performance resulted in the defendant being convicted of attempted forcible rape instead of the original charge of aggravated rape.
 

 This assignment of error lacks merit.
 

 Appellate Counsel
 

 The defendant argues that his appellate counsel was ineffective since he failed to raise the
 
 pro se
 
 assignments of error. The errors “missed” by counsel were raised by the
 
 pro se
 
 defendant and considered by this court. Finding the
 
 pro se
 
 complaints to be meritless, we also determine that the defendant’s ineffective assistance of counsel allegation is, likewise, meritless.
 

 CONCLUSION
 

 The defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Among these allegations were the following: the prosecutor allowed false evidence to go uncorrected at trial, mislead the jury on evidence, appealed to the prejudices of the jury, and took advantage of the incompetency of defense counsel.